**The CARRIAGE CLUB, INC., Appellant,**

v.

**AMERICAN MOTORISTS INSURANCE CO., Respondent.**

**No. WD 32881.**

Missouri Court of Appeals,
Western District.

Oct. 5, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 30, 1982.

Application to Transfer Denied Jan. 17, 1983.

R.W. Miller, Kevin E. Glynn, Kansas City, for appellant.

James T. Ferrini, Richard A. Buchanan, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., Edward L. Smith, Knipmeyer, McCann, Fish & Smith, Kansas City, for respondent.

Before MANFORD, P.J., and WASSERSTROM and KENNEDY, JJ.

MANFORD, Presiding Judge.

This appeal follows entry of a summary judgment which denied insurance coverage and a claim for property damage. The judgment is reversed and the cause remanded with directions.

Three points are presented which, in summary, charge the trial court erred in granting summary judgment because (1) the loss and damage resulted from an insured peril; (2) there existed an ambiguity in the insuring contract; and (3) respondent insurer should be estopped from denying coverage because it has paid a portion of the loss sustained. Because of the disposition of this appeal, points (2) and (3) are not reached by this court.

This dispute arises as a result of a disastrous flood which struck an unsuspecting area of Kansas City, Missouri, (the Country Club Plaza) on September 12, 1977. A water course, well known to residents of the Kansas City area as "Brush Creek", overran its banks and flooded the surrounding area. Appellant's property is located at 50th Street and State Line and within the

flooded area. Appellant's property includes a club house, swimming pools, and tennis courts. The tennis courts located at the north end of appellant's property abut Brush Creek. The tennis courts were covered by the floodwater.

After the surface-flooding water receded, it was observed that some of the tennis courts had been damaged. Respondent paid appellant the sum of $37,168.85 under a claim for that damage. In March, 1978, when the winter snows had melted away, damage similar to that paid to appellant was apparent in the other courts. These damages consisted of cracking, heaving, and buckling. Appellant presented a claim for this additional damage. Respondent denied the claim and suit was filed.

Both parties hired engineering experts. In most instances, courts are asked to observe the contrasting or even conflicting opinions of experts, but, in this case, it is the agreement among the experts as to certain facts to which our attention is directed. Both experts agreed:

(1) the September, 1977 flood deposited excess moisture in the clay soil beneath the tennis courts;

(2) the excess moisture caused pressure within the soil;

(3) the moisture froze during the winter period of 1977–1978;

(4) when the soil moisture froze, expansion occurred, which, in turn, caused additional pressure within the soil; and,

(5) the pressure and freezing caused the soil beneath the courts to lift and heave, thereby cracking the asphalt-paved surfaces.

Appellant had purchased an all-risk policy from respondent. In addition, appellant purchased a special flood endorsement. There is no dispute between the parties that the base policy and the flood endorsement were in full force and in effect on September 12, 1977. In fact, as noted above, respondent paid to appellant the sum of $37,-168.85 under the terms of the policy and endorsement. The dispute arises from respondent's denial of the "second" claim

based on the contention that this claim is for damages from perils excluded under the policy. The pertinent exclusions are set forth as follows:

"This policy does not issue against loss or damage:

B.  Caused by or resulting from earthquake, landslide, subsistence, or other earth movement.

I.  By shrinkage, evaporation, loss of weight, contamination, change in temperature or humidity.

P.  By wet or dry rot, smog, smoke fumes or vapors from agriculture or industrial operations; settling, cracking, shrinkage or expansion of pavements; foundations, walls, floors, roofs or ceilings; rain, snow, sand or dust whether driven by wind or not. . . .

R.  to fences, pavements . . . . when loss is caused by water pressure, ice or impact of water craft."

Cross motions for summary judgment were filed and the trial court entered summary judgment for respondent carrier declaring, "The Court believes that the damage for which Plaintiff now seeks recovery is excluded by the specific terms of the policy."

The parties on this appeal agree the issue is one of a matter of law and do not dispute the facts. The parties agree that the entire controversy settles upon whether the trial court, as a matter of law, correctly interpreted the exclusions within the policy and thereby entered a proper judgment.

In simple form, appellant's position is that, in September, 1977, a flood occurred and caused readily observable damage to some of its tennis courts. Appellant observes it had a flood endorsement on its policy, that respondent paid a part of the loss, and that, after the 1977–1978 winter, the melting of snows caused additional damage which was the direct and proximate result of the floodwaters of September, 1977.

Respondent's position, stated in simple form, is that appellant had a valid all-risk

policy with a special flood endorsement. The flood occurred and appellant suffered damage to its tennis courts for which respondent promptly reimbursed appellant. From this point on, the parties disagree. Respondent argues that the damage observed in March, 1978, was caused by " . . . . earth movement which has been specifically excluded from coverage by clause (B)" Respondent further contends, "The cracks in the courts are cracking of pavements which have been excluded by clause (P)." Respondent further contends that since, "both experts agree the soil heaving was initiated by freezing of the moisture within the soil, as well as hydrostatic pressure generated by excess moisture . . . . thus all of the surface damages to the courts fall squarely within exclusion (R)."

It is appellant's position that the claimed damage was the direct and proximate result of the September, 1977, flood and that the rule in *Cova v. Bankers and Shippers Insurance Co. of New York,* 100 S.W.2d 23, 29 (Mo.App.1937) controls. The rule in *Cova* provides:

" . . . . where the peril specifically insured against sets other causes in motion which in an unbroken sequence and connection between the act and the final injury produce the final result for which the insured seeks to recover under his policy, then the peril insured against will be regarded as the proximate cause of the entire loss so as to render the insurer liable for the entire loss within the terms fixed by the policy."

In arguing against application of *Cova,* respondent points out that there was no issue of whether a policy exclusion applied. Respondent contends that the instant case is controlled by *Madison Block Pharmacy, Inc., v. United States Fidelity and Guaranty Company,* 620 S.W.2d 343 (Mo. banc 1981) which provides the rule that:

"in our opinion, the question of determining what losses directly and proximately flow from a specified covered peril cannot be reached until it is determined whether or not the exclusionary language

clearly and unambiguously precludes recovery for such losses." *Madison* at p. 346.

From this rule, respondent argues appellant's claimed damage resulted not from flooding or the floodwaters, but rather as a result of earth movement caused by water pressure and ice which brings the claimed damage within the specific exclusion of the policy.

Appellant confronts *Madison* by pointing out that the policy questioned in *Madison* specifically *excluded* coverage for property damage caused by the flood. In *Madison,* our state Supreme Court set forth the exclusions and at p. 344 of the opinion, the following is to be found:

"Exclusions:

. . . . C.  Loss caused by, resulting from contributed to, or aggravated by any of the following:

2.  flood, surface waters . . . . ".

We think appellant's position is well taken. In the instant case, the policy in dispute has affixed to it a special flood endorsement. Hence, unlike the parties to the insurance contract in *Madison,* the parties herein specifically contracted for flood damage coverage.

While respondent offers to this court the suggestion that the damage under appellant's claim resulted from hydrostatic pressure, ice, and movement of the earth, and, hence, is excluded, the fact remains that the water which was present was floodwater from the flooding of September, 1977. Respondent seems to suggest that the pressure, ice, and earth movement were some intervening cause and effect, thus causing the excluded perils portion of its policy to apply. This court has difficulty in following that argument, particularly in light of the uncontroverted testimony of the experts placing the floodwater at the location of the claimed damage.

There is no question of the soundness of the rule in *Madison* that direct and proximate cause must be weighed in the light of all of the terms of an insurance contract. However, this does not force the exclusive

conclusion that there is no coverage just because a policy contains exclusions. The key expression in the rule within *Madison* is ".... whether or not the exclusionary language clearly and unambiguously precludes recovery for such losses."

The special flood endorsement to the instant policy provides:

"It is understood and agreed that flood coverage is added to this policy by deletion of the words 'caused by or resulting from flood' from Section 9c ...".

Section 9 is the Perils Excluded portion of the policy. The net effect of the endorsement was to remove the excluded peril of flood within 9c.

This court concludes that the exclusions referenced above are not those which were contemplated as applicable to or against the coverage extended under the special flood endorsement, and hence, are not applicable. Any other result would lead to the conclusion that appellant purchased a special flood endorsement limiting coverage when the peril insured against (i.e., flood) manifested itself and caused damage to property through some other form (i.e., ice, pressure, earth movement). Neither the special flood endorsement nor any evidence upon this record suggests to this court such a finding.

We conclude, under the facts and circumstances of the instant case, the exclusions claimed applicable by respondent are not applicable as regards the terms of the special flood endorsement. It is also found, under the facts and circumstances that said exclusions do not clearly and unambiguously preclude recovery. In addition, it is found that *Madison* supra is distinguishable from the instant case, and, hence, not controlling because of the special flood endorsement herein. It is further found that the direct and proximate cause of appellant's damage was the flood of September 12, 1977, and a peril insured within the terms of the special flood endorsement.

The judgment is reversed and this cause is remanded with directions to the circuit court to determine the damages in said cause, and, upon ascertainment thereof, to enter judgment for appellant in conformity with this opinion.