Samuel G. TOUMAYAN and Barbara Toumayan, Plaintiffs/Respondents,

v.

STATE FARM GENERAL INSURANCE COMPANY, and State Farm Fire and Casualty Company, Defendants/Appellants.

No. 72886.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 21, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 8, 1998.

Kevin P. Schnurbusch, Adrian P. Sulser, Evans & Dixon, L.L.C., St.Louis, for defendants/appellants.

Gael D. Wood, Ekelkamp, Eckelkamp, Wood & Kuenzel, John L. McMullin, Steven D. Asher, Brown & James, P.C., St. Louis, for plaintiffs/respondents.

CRANE, Presiding Judge.

Defendant insurers appeal from that part of an amended judgment granting summary judgment in plaintiff homeowners' favor on their claim for damages for breach of a homeowner's policy. Defendants argue that the trial court misconstrued the policy when it determined that the policy covered damage that plaintiffs incurred when land at the rear of their home moved, causing a concrete patio and retaining wall to subside. We reverse and remand.

We recite the facts as stipulated. Plaintiffs, Samuel G. Toumayan and his wife, Barbara Toumayan, are the owners of real property located at # 30 Briar Cliff in St. Louis County which consists of a single family dwelling and other improvements. In 1990 defendant State Farm Fire and Casualty Company [hereinafter individually referred to as State Farm] issued to plaintiffs a policy of homeowner's insurance for the real property.[1] In April, 1993 there were unusually heavy rains in the St. Louis area and the land at the rear of the plaintiffs' property moved downward and away from the dwelling, causing the concrete patio and retaining wall to subside.

Plaintiffs first notified State Farm of their claim on April 30, 1993. On May 3, 1993 Mike Macalady, a State Farm claim specialist, inspected and took photographs of the insured premises. The same day Macalady spoke with Donald Eskridge, a consulting engineer from Reitz and Jens, the firm plaintiffs hired to both evaluate the cause of the damage and to determine the means of remediation. Eskridge informed Macalady that plaintiffs' property had suffered a landslide and that the exact cause was unknown. On May 5, 1993 State Farm denied plaintiffs' claim for coverage of the damage.

Thereafter, a large portion of the land and soil at the rear of plaintiffs' residence was excavated for the purpose of stabilizing the land and allowing the destroyed patio and retaining wall to be replaced. During the excavation process a broken lateral sewer line was discovered leading from beneath plaintiffs' residence out toward the rear of the home. Various levels of fill material were identified during the excavation process which appeared to be the result of previous attempts at repair or remediation.

On August 9, 1994 plaintiffs filed a petition against defendants to recover damages for breach of contract and vexatious refusal to pay. After the petition had been filed, Eskridge, plaintiffs' engineering expert, prepared a report indicating that a cause of the earth movement was water saturation into the ground from the sewer pipe that had broken under plaintiffs' house. By the time State Farm was made aware of Eskridge's opinion, the damage had been repaired. Plaintiffs expended $129,890.32 to repair and restore the damaged property.

The parties stipulated that Eskridge would testify under oath that there was no evidence that land movement caused the break in plaintiffs' sewer line, that the break in the sewer line was under plaintiffs' house, and that the cause of the land movement was water saturation into plaintiffs' property, which water entered from the broken sewer line beneath plaintiffs' home.

The parties agreed to submit the coverage issue on cross motions for summary judgment with a Joint Stipulation of Facts. The trial court, Judge Kenneth M. Weinstock, granted the plaintiffs' motion for summary judgment and denied defendants' motion for summary judgment on the coverage issue

---

1. State Farm General Insurance Company was named as an additional defendant, but denied that it issued the policy. It remained in the case as a defendant although it is not mentioned in the Stipulation of Facts.

and awarded plaintiffs damages in the amount of $129,890.32. The vexatious refusal to pay claim was tried to a jury before Judge Mary Sheffield. The jury returned a verdict in defendants' favor. The trial court entered an amended judgment in favor of defendants on the vexatious refusal to pay claim and in favor of plaintiffs on their contract claim.

On appeal defendants challenge the trial court's entry of summary judgment in plaintiffs' favor. Defendants contend that the trial court erred in determining that the homeowner's policy covered the damages plaintiffs sustained as a result of a landslide to their property.

■■■ Summary judgment is appropriate if the motion and response demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of a summary judgment is purely an issue of law and our standard of review on appeal is essentially *de novo. Id.* We need not defer to the trial court's order granting summary judgment because its judgment is founded on the record submitted and the law. *Id.* Summary judgment is particularly appropriate if the issue to be decided is the construction of a contract that is unambiguous on its face. *Pakmark Corp. v. Liberty Mut. Ins. Co.,* 943 S.W.2d 256, 258 (Mo.App.1997). Disputes arising from interpretation and application of insurance contracts are matters of law for the court where there are no underlying facts in dispute. *Id.*

Defendants rely on the following provisions in the homeowners policy:

## SECTION I COVERAGES

### COVERAGE A—DWELLING

3. Except as specifically provided in **SECTION I—ADDITIONAL COVERAGES, Land,** we do not cover land, including the land necessary to support any Coverage A property. We do not cover any costs required to replace, rebuild, stabilize, or otherwise restore the land, nor do we cover the costs of

repair techniques designed to compensate for or prevent land instability.

. . .

## SECTION I LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

. . .

l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

. . .

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

. . .

b. **Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion . . .

. . .

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

. . .

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises.**

The policy also contained the following endorsement on which plaintiffs rely in part:

### BACK–UP OF SEWER OR DRAIN ENDORSEMENT

### SECTION I LOSSES INSURED

We cover accidental direct physical loss caused by water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

. . .

All other policy provisions apply.

 Defendants argue that plaintiffs' loss constituted a loss to land for which no coverage is afforded under the homeowner's policy and is excluded from coverage under the earth movement exclusion as well as the other exclusion clauses set out above. We find that there is no coverage by virtue of the earth movement exclusion and do not reach the questions of whether coverage is barred or excluded under the other clauses.

The policy provides that State Farm does not insure under any coverage for any loss which would not have occurred in the absence of earth movement. The parties stipulated that the damage to plaintiffs' property was caused by a broken sewer line, which was the cause and not the result of earth movement. Defendants argue that, while the earth would not have moved had the sewer pipe not broken, causing water to escape and saturate the soil, the language of Section I, paragraph 2 indicates that so long as earth movement was involved, coverage is denied regardless of the cause.

Plaintiffs respond that, because the cause of their loss, water saturation from the broken sewer pipe, was specifically covered by the back-up of sewer or drain endorsement, it does not matter that the resulting damage was caused by an excluded event, earth movement, citing *Jones v. Columbia Mut. Ins. Co.*, 700 S.W.2d 187 (Mo.App.1985) and *Carriage Club v. American Motorists Ins.*, 643 S.W.2d 38 (Mo.App.1982). Plaintiffs' argument relies on the application of the efficient proximate cause doctrine.

 Where a risk specifically insured against sets other causes in motion in an unbroken sequence between the insured risk and the ultimate loss, the insured risk is regarded as the proximate cause of the entire loss, even if the last step in the chain of causation was an excepted risk. *Bartholomew v. Cameron Country Mut. Ins.*, 882 S.W.2d 173, 175 (Mo.App.1994) (quoting 5 Appleman, Insurance Law and Practice, [Section] 3083 at 309–311 (1970)). "It is not necessarily the last act in a chain of events which is, therefore, regarded as the proximate cause, but the efficient or predominate cause which sets into motion the chain of events producing the loss." *Id.* If the language of the sewer endorsement covered the specific facts of this case and the efficient proximate cause doctrine applied, then plaintiffs could recover under the policy because a covered risk under the endorsement, a bro-

ken sewer pipe, set in motion a sequence of events which ultimately caused the loss from an excepted risk, earth movement.

The application of the efficient proximate cause doctrine is appropriate where there is an absence of exclusionary language or where the insurance contract is ambiguous. *Madison Block Pharmacy v. U.S. Fidelity*, 620 S.W.2d 343, 346 (Mo. banc 1981). The question of determining what losses directly and proximately flow from a specified covered peril cannot be reached until it is determined whether or not the exclusionary language clearly and unambiguously precludes recovery for such losses. *Id.* The parties to an insurance contract can contract out of the efficient proximate cause doctrine by exclusionary language. State Farm's policy contains exclusionary language in the lead-in clause (Clause 2) which excludes any loss which would not have occurred in the absence of earth movement *regardless of the cause of the loss or whether other causes acted concurrently or in sequence with* the earth movement to produce the loss. This exclusionary language is unambiguous and prevents application of the proximate cause doctrine. *See Rodin v. State Farm Fire and Cas. Co.*, 844 S.W.2d 537, 539 (Mo.App.1992) (construing an almost identical exclusionary clause). *See also TNT Speed & Sport Center, Inc. v. American States Ins. Co.*, 114 F.3d 731, 733 (8th Cir. 1997) (applying Missouri law) and *Pakmark*, 943 S.W.2d at 261 (construing similar exclusionary clauses). Clause 2.b. of the policy excludes coverage for losses caused by earth movement, regardless of the existence of any other contributing causes in any sequence.

In addition, courts in other states have construed the exact exclusionary clause in State Farm's policy to effectively contract out of the efficient proximate cause doctrine. *See Millar v. State Farm Fire and Cas. Co.*, 167 Ariz. 93, 804 P.2d 822, 825 (App.1990); *Village Inn Apartments v. State Farm*, 790 P.2d 581, 583 (Utah App.1990); *Alf v. State Farm Fire and Cas. Co.*, 850 P.2d 1272, 1278 (Utah 1993). *See also Schroeder v. State Farm Fire and Cas. Co.*, 770 F.Supp. 558, 560 (D.Nev.1991) (construing very similar language).

*Jones* and *Carriage Club*, on which plaintiffs rely, are both distinguishable. The policy in *Jones* covered direct loss caused by freezing of a plumbing system. The policy also contained a conflicting water damage exclusion. Finding no ambiguity, the court reconciled the two provisions to mean that any water damage directly resulting from such freezing is covered, and that the exclusion applies only to damage resulting from natural water or other sources. *Jones*, 700 S.W.2d at 189. The water damage exclusion in *Jones* does not contain clear language excluding water damage regardless of the cause as in the case before us.

The policy in *Carriage Club* contained an exclusion for loss to pavements when such loss is caused by water pressure or ice and for loss resulting from earth movement. The policy also contained a special flood endorsement. Recognizing the rule that direct and proximate cause must be weighed in the light of all of the terms of an insurance contract, the court held that the exclusions did not clearly and unambiguously preclude recovery under the special flood endorsement. *Carriage Club*, 643 S.W.2d at 41. Likewise, the policy in *Carriage Club* did not contain clear exclusionary language excluding loss caused by earth movement regardless of any contributing causes. Furthermore, the special endorsement in *Carriage Club* did not contain clear language stating that all other policy provisions apply as in the case before us.

That part of the amended judgment granting summary judgment in favor of Samuel and Barbara Toumayan is reversed and the case is remanded to the trial court.

RHODES RUSSELL and JAMES R. DOWD, JJ., concur.