Florence CHASE, Appellant,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Appellee.

No. 99–CV–759.

District of Columbia Court of Appeals.

Argued April 24, 2000.

Decided Sept. 13, 2001.

Joel C. Mandelman, Arlington, VA, for appellant.

Richard E. Schimel, Bethesda, MD, for appellee.

Before FARRELL, REID, and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

Florence Chase's home collapsed after a water overflow from a burst pipe caused the movement of soil beneath the foundation of the house. Chase had homeowners insurance under a policy issued by State Farm Fire and Casualty Company ("State Farm"), but State Farm denied coverage on the ground that the damage fell within an exclusion in the policy for losses attributable to "earth movement." The trial court granted summary judgment in favor of State Farm, and Chase has appealed. We are constrained to hold that the State Farm policy unambiguously excludes coverage for Chase's loss. Our holding is subject, however, to the potential applicability of a provision in the "additional coverages" section of the policy that neither party has addressed. We remand solely for consideration of that provision.

I.

Chase bought her home in August of 1986 for $32,000. The main water pipes, along with a hot water heater, a furnace and a sump pump, were located directly underneath the structure, in an enclosed crawl space. The crawl space was uninsulated, and each winter the pipes would freeze, burst, and have to be repaired.

On February 5, 1996, a "bitter cold" day, Chase came home from work and heard water running. She looked in the crawl space and saw that approximately three feet of water had accumulated from a burst pipe. Chase called the Water and Sewer Authority to shut off the water supply, and then left to stay at her mother's house. At some point in the next few days, Chase returned to her house, did not hear water running, and checked the crawl space. She found that her sump pump had failed to drain the water, which was at the same level as on February 5. On February 12, Chase returned again, and discovered to her dismay that the living room floor had collapsed and the fireplace had separated from the wall. The extensive damage made the house uninhabitable. Chase notified State Farm the same day.

State Farm sent Edgar O. Seaquist, a structural engineer, to inspect the property. In due course Seaquist rendered the opinion that the house

> had experienced a massive failure of the foundation supporting the chimney-fireplace system and the floor structure as a direct result of the vertical and horizontal movement of the earth banks at the face of the central foundation. This occurred when the soil became water saturated and its properties changed so that the soil flowed out from below the foundations, thereby eliminating the support for the chimney-fireplace system and the floor structure.

Based on Seaquist's assessment, which is uncontested, State Farm denied Chase's insurance claim. State Farm relied on the following "earth movement" exclusion in its homeowners policy:

We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

\* \* \*

b. Earth Movement, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion.

Upon State Farm's denial of her claim, Chase filed a complaint against the company in Superior Court. In her complaint, Chase asserted causes of action based on breach of contract and negligent inspection of her property. State Farm moved for summary judgment, relying on the earth movement exclusion and Seaquist's opinion, quoted above, regarding the cause of Chase's loss.[1] The trial court granted summary judgment for State Farm on the breach of contract count, "for the reasons stated" in State Farm's summary judgment memorandum. Chase thereupon dismissed her negligent inspection count and took this appeal.

---

1. The evidence on which State Farm relied in support of its motion included Chase's homeowner's insurance policy, her deposition testimony, Seaquist's inspection reports and accompanying affidavit, and the affidavit of the State Farm claim specialist who ultimately denied Chase's claim based on the earth movement exclusion and Seaquist's findings.

## II.

### A. Standards of Review, Policy Interpretation, and Burden of Proof

 On appeal from a grant of summary judgment, our review is de novo, and we conduct "an independent review of the record." Drejza v. Vaccaro, 650 A.2d 1308, 1312 (D.C.1994). We employ the same substantive standard as the trial court. Summary judgment is proper if there exists no genuine issue of material fact and, on the record, the movant is entitled to judgment as a matter of law, under the appropriate burden of proof. See, e.g., Cameron v. USAA Property and Casualty Ins. Co., 733 A.2d 965, 967 (D.C. 1999); Nader v. de Toledano, 408 A.2d 31, 41–42 (D.C.1979). In this case, the parties do not dispute the material facts concerning the loss that Chase sustained. The propriety of summary judgment turns primarily on a question of contract interpretation—whether the earth movement exclusion in the homeowners insurance policy that State Farm issued to Chase excepts her loss from coverage. The burden of proving that Chase's loss falls within that exclusion is on State Farm. See Cameron, 733 A.2d at 969.

 Our examination of the earth movement exclusion is governed by long settled principles of insurance contract interpretation. Insurance contracts are complicated and often confusing instruments, employing specialized concepts and terminology. "The phraseology of contracts of insurance is that chosen by the insurer and the contract in fixed form is tendered to the prospective policyholder who is often without technical training, and who rarely accepts it with a lawyer at his elbow." Pennsylvania Indem. Fire Corp. v. Aldridge, 73 App.D.C. 161, 162, 117 F.2d 774, 775 (1941) (quoting Aschenbrenner v. United States Fid. & Guar. Co., 292 U.S. 80, 84, 54 S.Ct. 590, 78 L.Ed. 1137 (1934)).

In recognition of these realities, ambiguities in an insurance policy are construed against the insurer and in favor of "the reasonable expectations of the purchaser of the policy." Smalls v. State Farm Mut. Auto. Ins. Co., 678 A.2d 32, 35 (D.C.1996). "[T]he general rule applicable in the interpretation of an insurance policy is that, if its language is reasonably open to two constructions, the one most favorable to the insured will be adopted. Any fair doubt as to the meaning of its own words should be resolved against the insurer." Aldridge, 73 App.D.C. at 162, 117 F.2d at 775. "It is the insurer's duty to spell out in plainest terms-terms understandable to the man in the street—any exclusionary or delimiting policy provisions." Cameron, 733 A.2d at 968 (citation and internal quotation marks omitted).

 If an exclusion in an insurance policy is not ambiguous, the courts must enforce "as written," without favoring one party or the other, so long as the exclusion does not violate a statute or public policy. See Smalls, 678 A.2d at 35. Whether language in a contract is genuinely ambiguous is a question of law, and thus we consider that question de novo on appeal. We follow the guideline that, "unless it is obvious that words which appear in an insurance contract are intended to be used in a technical connotation, they will be given the meaning which common speech imports." Aldridge, 73 App.D.C. at 162, 117 F.2d at 775. We may not "indulge in forced constructions to create an obligation against the insurer." Cameron, 733 A.2d at 968 (citation and internal quotation marks omitted). Moreover, otherwise clear language in an insurance agreement is not to be deemed ambiguous "merely because the parties do not agree" on its meaning. See Byrd v. Allstate Ins. Co., 622 A.2d 691, 694 (D.C.1993). Policy language is not genuinely ambiguous unless "it is susceptible of

more than one *reasonable* interpretation." *American Bldg. Maint. Co. v. L'Enfant Plaza Prop., Inc.*, 655 A.2d 858, 861 (D.C. 1995) (emphasis added).

### B. The Earth Movement Exclusion

State Farm invokes the exclusion in its homeowners policy for losses attributable to "earth movement" because it is undisputed, as a factual matter, that the collapse of Chase's house "would not have occurred in the absence of" such movement. As Edgar Seaquist explained, the foundation of the house failed "as a direct result of the vertical and horizontal movement of the earth banks .... when the soil became water saturated and ... flowed out from below the foundations." State Farm argues that this event fits squarely within the policy definition of "earth movement" as meaning "the sinking, rising, shifting, expanding, or contracting of earth, all whether combined with water or not," and is aptly described by one of the words used in the exclusion to illustrate that definition, "subsidence." [2]

Chase offers a number of reasons why the earth movement exclusion in her State Farm homeowners policy does not apply to the loss that she sustained when her water pipe ruptured, an otherwise covered risk. Her reasons boil down to four arguments.

Chase argues, first, that the earth movement exclusion must be construed to apply only to events that are caused by natural forces, either because that is what the exclusion plainly says or because ambiguities in the exclusion must be resolved in her favor. Second, Chase argues that the excluded event of earth movement was not the "efficient proximate cause" of her loss. Third, Chase argues that an endorsement to her policy specifically covered the failure of her sump pump to remove the water from the foundation area of her home. Fourth, Chase argues that she had a reasonable expectation that her losses would be covered which State Farm must honor.

Recognizing that insurance contract language often can be confusing and overwhelming for the average reader, and that "any reasonable doubt which may arise as to the meaning or intent" of an exclusion from coverage must "be resolved against the insurer," [3] we have considered Chase's contentions carefully. A number of other courts previously have examined the "unique" [4] language of the State Farm earth movement exclusion at issue here. We find ourselves in agreement with the large majority of those courts, which have found the exclusion unambiguous and have rejected contentions such as Chase advances here.[5] We are compelled to con-

---

**2.** Webster's Dictionary defines "subside" as "to sink or fall to the bottom: settle, precipitate" and "to tend downward: become lower: descend," and "subsidence" as "the act or process of subsiding: a falling, lowering, or flattening out." WEBSTER'S INTERNATIONAL DICTIONARY (3d ed.1993).

**3.** *Cameron*, 733 A.2d at 968 (quoting *United States Mut. Accident Ass'n of the City of New York v. Hodgkin*, 4 App.D.C. 516, 523 (1894)).

**4.** *Winters v. Charter Oak Fire Ins. Co.*, 4 F.Supp.2d 1288, 1292 (D.N.M.1998) (noting that "State Farm uses unique language, not employed in standard all-risk insurance policies," for its earth movement exclusion). We

caution that our construction of the earth movement exclusion is sensitive to the precise language that State Farm has used, and that we might reach different conclusions if a similar but not identical exclusion in another company's policy were before us.

**5.** *See Rhoden v. State Farm Fire & Cas. Co.*, 32 F.Supp.2d 907, 912 (S.D.Miss.1998); *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 310–11 (Ala.1999); *State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042, 1047 (Alas. 1996); *Toumayan v. State Farm Gen. Ins. Co.*, 970 S.W.2d 822, 826 (Mo.App.1998). *See also Schroeder v. State Farm Fire & Cas. Co.*, 770 F.Supp. 558, 560–61 (D.Nev.1991) (con-

clude that State Farm's earth movement exclusion unambiguously applies to the facts of this case.

### 1. Natural Causes Limitation

 In support of her contention that her policy excludes from coverage loss attributable to earth movement only where natural forces cause the earth movement, Chase focuses on the statement in the exclusion that earth movement "includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion." Chase argues that only natural events are mentioned in this list of illustrations, and that by the principle of construction known as *ejusdem generis*,[6] the term "earth movement" should therefore be limited to naturally occurring events. Although clause (d) of the lead-in paragraph to the exclusion states that it applies regardless of whether the excluded event arises from "natural or external forces," Chase claims that the word "external" is ambiguous, and should not be read so broadly as to include non-natural causes such as the rupture of a water pipe.

 We find Chase's arguments unpersuasive. Clause (a) of the lead-in paragraph states that the earth movement ex-

clusion applies "regardless of ... the cause of the excluded event." This categorical statement is unambiguous, and nothing in clause (d) qualifies or limits it, whatever the word "external" may be intended to mean.[7] Nor is it true that the examples of earth movement set forth in the exclusion are necessarily all natural events. Except, perhaps, for earthquakes, all of them may result from "non-natural" human activities as well as natural causes. Even if we ignore that fact and view the examples as purely natural events, *ejusdem generis* is not a guideline to be followed if the language of the policy exclusion manifests a clear contrary intent. That is the case here. The introduction to the earth movement exclusion states that the cause of the excluded event is irrelevant, and the exclusion states explicitly that earth movement is "not limited to" the examples enumerated.

### 2. Efficient Proximate Cause

 Chase asks us to apply the so-called "efficient proximate cause" doctrine, which is utilized in many jurisdictions to settle whether there is insurance coverage when a covered and a noncovered peril

struing the identical exclusion without clause (d)); *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274–78 (Utah 1993) (same); *Millar v. State Farm Fire & Cas. Co.*, 167 Ariz. 93, 804 P.2d 822, 824–25 (App.1990) (same); *Kula v. State Farm Fire & Cas. Co.*, 212 A.D.2d 16, 628 N.Y.S.2d 988 (1995) (same); *Village Inn Apartments v. State Farm Fire & Cas. Co.*, 790 P.2d 581, 583 (Utah App.1990). *But see Murray v. State Farm Fire & Cas. Co.*, 203 W.Va. 477, 509 S.E.2d 1, 9–10 (1998); *Cox v. State Farm Fire & Cas. Co.*, 217 Ga. App. 796, 459 S.E.2d 446, 447–48 (1995).

6. " 'Where general words are followed by a description of specified subjects, the meaning of the general words ordinarily will be presumed to be limited to the enumerated special subjects, and to include only those things of

the same nature as those specifically enumerated, unless a clear manifestation of a contrary intent appears.' " *Peach State Unif. Serv., Inc. v. American Ins. Co.*, 507 F.2d 996, 999 (5th Cir.1975) (quoting *Jenkins v. Jones*, 209 Ga. 758, 75 S.E.2d 815, 818 (1953)).

7. We grant that the meaning of the word "external" in clause (d) is uncertain. We do not find compelling the argument that "external" must mean "external to nature," and hence human-made. *See Bongen*, 925 P.2d at 1047. Although that is a plausible interpretation, other interpretations are also possible. But whatever the word "external" is intended to signify, the rest of the lead-in paragraph states unambiguously that the earth movement exclusion applies regardless of the cause.

contribute to a loss. The doctrine holds that unless the insurance policy provides otherwise, "[i]f a covered peril is found to be the efficient proximate cause, then the loss is covered; if a noncovered peril is found to be the efficient proximate cause, then the loss is not covered." *Pioneer Chlor Alkali Co. v. National Union Fire Ins.*, 863 F.Supp. 1226, 1230 (D.Nev.1994).[8] Our own case law, which simply focuses on the "proximate cause" of the loss, follows the same principle. *See Unkelsbee v. Homestead Fire Ins. Co.*, 41 A.2d 168, 171 (D.C.1945) ("whether appearing in a clause creating or in one excepting from liability, unless qualifying words appear, such as 'direct,' 'direct or indirect,' 'sole,' etc., the usual rule attributing a result to the proximate and not to the remote cause has been applied"). *See also Quadrangle Dev. Corp. v. Hartford Ins. Co.*, 645 A.2d 1074, 1076–77 (D.C.1994) (citing *Unkelsbee* and describing "proximate cause" in the insurance context as "the efficient cause, the one that necessarily sets the other causes in operation," and as "the dominant cause," distinguishing it from "merely incidental" causes).[9]

■ Chase contends that the efficient proximate cause of her loss was a covered peril—the rupture of her water pipe—rather than the uncovered peril of the earth movement that resulted from that rupture. We need not decide whether Chase is correct on this point. "The efficient proximate cause doctrine is a default rule which gives way to the language of the contract." *Pioneer Chlor Alkali*, 863 F.Supp. at 1232 (citations omitted). The State Farm policy unambiguously dictates that proximate causation rules are not to be followed in connection with the earth movement exclusion. The lead-in paragraph to that exclusion addresses the issue explicitly. That paragraph excludes from coverage "any loss which would not have occurred in the absence of" earth movement. The exclusion applies "regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss. . . ." In other words, if earth movement was a contributing cause of the loss of Chase's property, the policy does not cover that loss—even if earth movement was not the (efficient) proximate cause and there were more dominant causes involving covered risks. The causation language in the introduction to the earth movement exclusion is clearly intended to supplant the efficient proximate cause doctrine. *Cf. Quadrangle*, 645 A.2d at 1076 (noting that where insurance policy denies coverage if excluded event is "merely an indirect cause" of the loss, "[t]he broad sweep of the . . . exclusion reaches damages not proximately caused by the excluded risk"). This is a permissible outcome in the District of Columbia, as there is no statute or public policy requiring otherwise. "Generally, parties are

---

8. Courts have defined the term "efficient proximate cause" in various ways. Some courts describe it as the first cause in a chain of events leading to the loss. *See, e.g., Schroeder*, 770 F.Supp. at 561. Other courts refer to it as the predominant cause of a loss. *See, e.g., Bongen*, 925 P.2d at 1043 n. 1. *See generally Pioneer Chlor Alkali Co.*, 863 F.Supp. at 1230.

9. Generally speaking, it seems fair to say that "ordinary proximate cause differs little, if at all, from efficient proximate cause." *Pioneer Chlor Alkali*, 863 F.Supp. at 1231. It should be noted that "the concept of proximate cause in insurance contract actions is not identical with that concept in tort actions." *Quadrangle*, 645 A.2d at 1077. "Proximate cause in the insurance context is essentially the same as proximate cause in the negligence context, . . . except foreseeability is not an element." *Pioneer Chlor Alkali*, 863 F.Supp. at 1231 n. 5 (citations omitted).

free to enter into whatever contractual agreements they wish. That freedom is curtailed by the courts only when such contracts, or contractual provisions, run contrary to public policy." *Smalls,* 678 A.2d at 36.

### 3. *The Sump Pump Rider*

■ When Chase obtained her homeowners insurance, she purchased an endorsement that removed a specific "water damage" exclusion in the basic policy [10] and added a so-called "sump pump rider." That rider reads, in pertinent part, as follows:

> We cover accidental direct physical loss caused by water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.... All other policy provisions apply.

Chase contends that the "plain language" of this rider "indicates that it covers the insured against all property damage sustained should the pump fail to operate properly, which is what occurred" when her sump pump failed to remove the water that accumulated in the crawl space beneath her house and caused the supporting soil to flow away from the foundation.

■ This contention is too sweeping. While the endorsement removed a specific water damage exclusion in the policy, it specified that "[a]ll other policy provisions apply." This can only mean that the earth movement exclusion (and other exclusions

not preempted by the endorsement) remained in effect. Hence, although the failure of the sump pump was a covered event, the presence of earth movement—an excluded event—in the chain of causation operated to exclude coverage under the policy. *Accord, Toumayan,* 970 S.W.2d at 825–26.

■ Chase additionally argues that if the sump pump rider does not cover her loss, the additional coverage it purports to provide is illusory because some excluded event would always preclude coverage. At oral argument, State Farm's counsel stated in response to this argument that the rider covers a range of damage to floors, carpets, and other parts of the house caused by water seepage attendant upon the failure of a sump pump. While the additional coverage afforded by the rider may be limited, we cannot say that it is non-existent or de minimis, and thus we are not prepared to hold that the failure of the endorsement to override the earth movement exclusion is unconscionable.

### 4. *Reasonable Expectations*

This court has previously had occasion to discuss what we have referred to as "the doctrine of reasonable expectations." *Smalls,* 678 A.2d at 35. Under that rubric, we stated that "[s]ince insurance contracts are written exclusively by insurers, courts generally interpret any ambiguous provisions in a manner consistent with the reasonable expectations of the purchaser of the policy." *Id.* Seeking to invoke this principle, Chase argues that she had reasonable expectations that should override any language in the policy that would deny

**10.** The deleted water damage exclusion would have excluded coverage for losses attributable (in accordance with the same lead-in paragraph as the earth movement exclusion) to water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.

coverage of her loss in this case. Chase makes three contentions. First, she asserts that the insurance policy language was too complicated for her to understand that it afforded only limited protection. Second, she suggests that public policy dictates that insurance companies should not be permitted to limit coverage so drastically. And third, she proposes that if State Farm is going to sell such limited coverage, it should be required to disclose and explain the limitations to the consumer at the time the policy is sold.

■■■■■ We recognize that purchasers of insurance may often retain expectations that are contrary to the language of their policies. We appreciate that even if policy language is explicit, insureds may not actually read it; or, if they do read it, that they may not comprehend fully all the ramifications of the unavoidably complicated provisions concerning coverage and exclusions from coverage. We imagine that few purchasers of homeowners insurance have the knowledge and experience to foresee clearly how exclusions may operate, or even to foresee the perils that may trigger the exclusions. Nonetheless, the reasonable expectations doctrine is not a mandate for courts to rewrite insurance policies and reallocate their assignment of risks between insurer and insured. If the policies "are clear and unambiguous, they will be enforced by the courts as written, so long as they do not 'violate a statute or public policy.' " *Smalls, supra* (quoting *Robinson v. Aetna Life Ins. Co.,* 288 A.2d 236, 238 (D.C.1972)). We have concluded that the earth movement exclusion in the State Farm homeowners policy before us is not ambiguous. There is no statute or articu-

lated public policy that would restrain its operation in this case. Nor can we say that State Farm owed Chase a greater duty of disclosure or warning than the duty it fulfilled by using clear and unambiguous language in drafting the exclusionary provision in the policy.[11] Our duty, therefore, is to enforce the insurance contract as written.

### 5. The Additional Coverages Provision

■■■■■ If the duty of the court in evaluating Chase's reasonable expectations claim is to enforce the State Farm homeowners insurance contract as it is written, the court must read that contract, at the summary judgment stage, in its entirety. A policyholder's objectively reasonable expectations of coverage are shaped by the insurance contract taken as a whole. The earth movement exclusion may appear absolute when read in isolation, but its application may be limited by other provisions which the court, in ruling on a motion for summary judgment with the policy before it, must not ignore. As part of our independent review of the record "in the context of the legal and factual issues as framed by the parties at summary judgment," see *Vessels v. District of Columbia,* 531 A.2d 1016, 1019 (D.C.1987), we have therefore examined all the provisions of Chase's policy with an eye to their overall effect on the applicability of the earth movement exclusion and her reasonable expectations of coverage for the loss that she sustained. We find that the policy does contain a provision that may support Chase's reasonable expectations claim, at least to a limited extent.

11. We note that the cover of the State Farm homeowners policy displays the following statement:

 This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

The provision, which has been unremarked by the parties,[12] is contained in the "additional coverages" section of the policy and reads as follows:

10. **Land.** If a single event results in both a Loss Insured to the insured dwelling, other than the breakage of glass or safety glazing material, and a loss of land stability, we will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land: This includes the costs required to replace, rebuild, stabilize or otherwise restore the land. This Additional Coverage applies only to the land necessary to support that part of the insured dwelling sustaining the Loss Insured.

The SECTION I—LOSSES NOT INSURED reference to earth movement does not apply to the loss of land stability provided under this Additional Coverage.

We perceive the possibility that the rupture of the water pipe in the crawl space beneath Chase's house was a single event that "resulted" in both a Loss Insured to the insured dwelling and a loss of land stability within the meaning of this provision. If so, the provision states that the earth movement exclusion is inapplicable to the extent of the additional coverage of up to $10,000 for repair costs associated with the land necessary to support that part of the insured dwelling sustaining the Loss Insured.

As the parties have not addressed the effect of the provision we cite, we refrain from analyzing it further ourselves. It may be considered on remand.

### III.

We remand this case for further proceedings consistent with our opinion.

*So ordered.*

---

12. We are not precluded from considering this provision of the policy by the fact that Chase has not relied on it as support for her coverage claims. It is true that "[i]t is not the burden of the trial court [nor this court either] to search the record, unaided by counsel, to determine whether summary judgment is proper." *Cloverleaf Standardbred Owners Ass'n, Inc. v. National Bank of Washington,* 512 A.2d 299, 300 (D.C.1986). It is not up to "the court to construct a party's legal theories for him or make a tactical judgment as to which factual issues in the record to assert." *Vessels,* 531 A.2d at 1019. But where a legal theory that a party does advance is grounded on a contract that is before the court, the court does have a duty to read the contract without blinkers on, so that it can discern the meaning and applicability of its provisions correctly.