FILED
United States Court of Appeals
Tenth Circuit

June 25, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JENNIFER DAVIS-TRAVIS; JON-
MICHAEL TRAVIS,

      Plaintiff-Counter-Defendants-
      Appellants,

v.

STATE FARM FIRE & CASUALTY
COMPANY,

      Defendant-Counter-Claimant-
      Appellee.

No. 08-6135
(D.C. No. 5:07-CV-00014-R)
(W. Dist. Okla.)

---

## ORDER AND JUDGMENT[*]

---

Before **HENRY**, Chief Judge, **SEYMOUR**, and **EBEL**, Circuit Judges.

---

Jennifer Davis-Travis and Jon-Michael Travis (collectively the Travises)

appeal the district court's grant of summary judgment in favor of State Farm Fire

and Casualty Company ("State Farm"). We affirm.

The Travises are the named insured on a State Farm homeowner's policy

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with FED. R. APP. P. 32.1 and 10TH CIR. R. 32.1.

providing coverage for their home located in Edmond, Oklahoma. In July of

2006, Ms. Travis returned to her home to discover a pipe in the bathroom had

burst and flooded the house. Ms. Travis reported the claim to State Farm. Upon

inspection, a State Farm claim representative observed damage to the flooring and

baseboards as well settlement damage to the residence. State Farm retained a

plumber and an engineer to further inspect the damage at the home. The

plumbing report noted that repair work on the east and south sides of the house

had been performed due to damage caused by high ground water outside the

home. The report also contained the following observations:

> After inspecting the exterior of the dwelling, I found that water has
> been sitting close to the front, the south side, the southwest corner
> and the northwest side of the home during heavy rains. I found that
> every area of the dwelling that has water standing next to the exterior
> wall has settling problems in the interior of the home.
> . . . .
> The settling appears to have occurring [sic] over a period of several
> years and has become worse due to the dry conditions.

Aplt. App. at 279. The engineering inspection revealed cracks in the floor slab,

masonry cracks, interior wall cracks, and significant floor elevation variances

throughout the residence. The report also noted the following:

> In my opinion, the leak, which may have continued over many days,
> flooded the sub-grade under the south east portion of the house. This
> sub-grade probably consists of clay which in this area is very active.
> Active clays swell when they absorb moisture and shrink when they
> lose moisture. It appears the slab heaved significantly in the
> southeast bedroom and at the bathroom. This action caused the
> interior damages. It also appears that the clays under the foundation
> surrounding the two east bedrooms also heaved, pushing the

foundation up and causing the masonry cracks in the immediate area.

Aplt. App. at 282.

Based on the evidence it collected, State Farm covered the portion of the claim related to interior water damage but denied the portion related to the foundation movements caused by settlement. The denial was based on the following provisions of the policy:

> We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I -LOSSES NOT INSURED:
>
> SECTION I - LOSSES NOT INSURED
> . . . .
>
> 2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:[1]
>
> > . . . .
> > b. Earth Movement, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth Movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces.

Aplt. App. at 241, 243-244.

---

[1]We refer to this provision of the policy as the "lead-in clause."

Contending the settlement damage was not excluded by these provisions, the Travises sued State Farm alleging breach of insurance contract and breach of the duty of good faith and fair dealing. The parties filed cross-motions for summary judgment.

In reaching its decision, the court noted *Duensing v. State Farm Fire and Casualty Company*, 131 P.3d 127 (Okla. Civ. App. 2005), wherein the Oklahoma Court of Appeals construed the identical provisions applicable here.[2] In *Duensing*, the court held "the lead-in clause to the earth movement clause is unambiguous. The only fair construction of that [clause] is that when more than one cause is involved in a loss which includes one of the excluded events named under the lead-in clause, in this case, earth movement, there is no coverage regardless of whether the causes acted concurrently or in sequence with the excluded event." *Id.* at 134.[3] The district court agreed with *Duensing* as to the unambiguous nature of the lead-in clause, but rejected the court's conclusion that the earth movement clause was ambiguous. Applying Oklahoma contract law

[2]*Duensing* is not precedential. "No opinion of the Court of Civil Appeals shall be binding or cited as precedent unless it shall have been approved by the majority of the justices of the Supreme Court for publication in the official reporter." Okla. Stat. tit. 20, § 30.5. The case was not so approved.

[3]The lead-in clause is what is known as an anticoncurrent cause provision, that is, a provision specifically designed to avoid the efficient proximate cause doctrine which holds that if a covered loss is the proximate cause of an excluded event, the excluded event is then covered. *See Duensing*, 131 P.3d at 133 & n.5. The lead-in clause operates to eliminate coverage for excluded events even when other causes operated concurrently or sequentially to cause the loss. *Id.*

principles, the district court held that the decision in *Duensing* was "too far reaching" in concluding the term "earth" was ambiguous. Aplt. App. at 515. Given the plain meaning of "earth movement," the district court held it applicable to the structural damage to the Travises' house and granted State Farm's motion for summary judgment.

We review the grant of summary judgment de novo, applying the same legal standard that the district court was required to use. *King v. PA Consulting Group, Inc.*, 485 F.3d 577, 585 (10th Cir. 2007). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, "[w]e view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Reinhart v. Lincoln County*, 482 F.3d 1225, 1229 (10th Cir. 2007) (citation omitted).

Under Oklahoma law, an insurance policy is treated as a contract and enforced according to its terms. *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery*, 747 P.2d 947, 953 (Okla. 1987). "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." Okla. Stat. tit. 15, § 157. Accordingly, when determining a policy's scope of coverage, we interpret the

policy as a whole. *See Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991). The words and phrases used in the policy are to be construed using their plain and generally prevailing meaning. Okla. Stat. tit. 15, § 160. To determine whether a contract is ambiguous, the court must place itself, to the extent possible, in the position of the parties at the time the contract was formed and consider the instrument as drawn, its purposes, and the circumstances surrounding the transaction. *Minor v. Blanton*, 243 P.2d 1008, 1012 (Okla. 1952); *see also* Okla. Stat. tit. 15, § 165. When the words are clear and unambiguous and lead to no absurd consequences, courts must enforce the policy language as written. *Wiley v. Travelers Ins. Co.*, 534 P.2d 1293, 1295 (Okla. 1974).

Notwithstanding the existence of triple negatives in the lead-in clause, and the fact that two courts have found that provision ambiguous, *see Murray v. State Farm Fire and Casualty Co.*, 509 S.E.2d 1, 13 (W. Va. 1998) (lead-in clause ambiguous); *Cox v. State Farm Fire and Casualty Co.*, 459 S.E.2d 446, 448 (Ga. Ct. App. 1992) (same),[4] the Travises do not raise that issue here. We, therefore,

--------

[4]*But see Duensing*, 131 P.3d at 134 ("[T]he lead in clause of the earth movement exclusion is neither masked by technical or obscure language nor hidden in the policy."); *Rhoden v. State Farm Fire & Cas. Co.*, 32 F. Supp. 2d 907, 911-13 (S.D. Miss. 1998) (applying lead-in language), *aff'd*, 200 F.3d 815 (5th Cir. 1999); *Boteler v. State Farm Cas. Ins. Co.*, 876 So.2d 1067, 1069-70 (Miss. Ct. App. 2004) (State Farm's lead-in language is "clear" and "[u]nambiguous language of exclusion"); *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123,1129-30 (D.C. 2001) (State Farm's lead-in language is unambiguous); *State Farm Fire & Cas. Co. v. Castillo*, 829 So.2d 242, 246 (Fla. Dist. Ct. App. 2002) (noting the "unambiguous language of the lead-in clause");

do not address that question.

That leaves us to discuss only whether the earth movement clause is ambiguous.[5] The Travises maintain the clause is ambiguous because the term "earth" is not defined in the policy and "earth" could be interpreted to mean many different things, as the *Duensing* court noted:

> We conclude "earth" *is* susceptible to multiple interpretations, i.e., a reasonably prudent lay person applying for casualty insurance might interpret "earth" to mean "the planet upon which we live," "soil for cultivating," "fragmental material composing part of the surface of the globe: soil, ground, usually distinguished from bedrock" or "areas of land uncovered by water," "the solid footing formed of earth" or "the solid materials that make up the physical globe." See Webster's Third New International Dictionary (1961). In the same dictionary, "earth movement" is defined as "differential movement of the earth's crust" or "elevation or subsidence of the land." As

---

*Toumayan v. State Farm Gen. Ins. Co.*, 970 S.W.2d 822, 826 (Mo. Ct. App. 1998) (State Farm's "exclusionary language in the lead-in clause" is "unambiguous"); *Kula v. State Farm Fire & Cas. Co.*, 628 N.Y.S.2d 988, 990-91 (N.Y. App. Div. 1995) ("the 'lead-in' clause . . . clearly excludes coverage for any loss regardless of the cause"); *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1276 (Utah 1993) (lead-in language is clear and unambiguous).

[5]Mr. and Ms. Travis moved us to certify several questions to the Oklahoma Supreme Court addressing the ambiguity of the earth movement exclusion. We ordinarily do not grant a request to certify a state law issue that was not first presented to the district court. *Massengale v. Oklahoma Bd. of Exam'rs in Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994) ("We generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court."); *see also Boyd Rosene & Assoc., Inc. v. Kansas Mun. Gas Agency*, 178 F.3d 1363, 1364 (10th Cir. 1995) ("Late requests for certification are rarely granted . . .and are generally disapproved, particularly when the district court has already ruled."). The Travises present no compelling reason for us to depart from our usual course.

defined by the American Heritage Dictionary (1986), "earth" means "the planet upon which human beings live, the third planet from the sun," "the land surface of the world" or "soil; dirt." The definition of "earth" in Black's Law Dictionary (6th Ed.) is "soil of all kinds, including gravel, clay, loam, and the like, in distinction from the firm rock." Considering the above definitions, the term "earth" is quite broad because it could either refer to the natural crust or solid surface of the earth ( terra firma ) or the multitude of materials that compose the earth's soil.

131 P.3d at 135 (emphasis in original).

Applying Oklahoma insurance law, we disagree. A word in an insurance policy is not ambiguous simply because it is undefined. *Cranfill v. Aetna Life Ins. Co.*, 49 P.3d 703, 706 (Okla. 2002). Likewise, the fact that a word cannot be precisely defined to make clear its application in every situation does not mean the word is ambiguous. *Id.* While the term earth could mean the planet on which we live, the term is not reasonably susceptible to this meaning when read in the context of the policy. In context, we are not persauded "that reasonably intelligent [people] on reading the contract would honestly differ as to its meaning." *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 546 n.19 (Okla. 2003). The evidence in this case shows that water leaked through the slab of the home to the sub-grade, causing it to swell and then shrink. The policy states, "Earth movement [means] the sinking, rising, shifting, expanding or contracting of the earth, all whether combined with water or not." *Supra* at 4.[6]

---

[6]The movement of the subgrade, or the earth upon which the home was built, is in direct contrast to the facts in *Duensing*. There "the issue [was]

-8-

The record is clear that the earth supporting the slab expanded and contracted, as a result of water, from whatever the source, and caused settlement damage.  Coverage for this damage was unambiguously excluded by the earth movement clause.  Our conclusion that the earth movement clause is not ambiguous is supported by several other jurisdictions.  *See, e.g., State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042, 1045 (Alaska 1996) (citing cases).[7]

In sum, because the term "earth movement" is not ambiguous in context, we do not reach the issue of bad faith.  *See Davis v. GHS Health Maint. Org.,*

---

whether the erosion of the 'sand fill' constitutes 'earth' as the term is used in the policy's earth movement exclusion." *Duensing*, 131 P.3d at 135. In *Duensing*, there was arguable evidence that the "sand fill [was] part of the material used to construct the house.  The testimony was that it was to insulate the slab from the movement of the earth." *Id.* at 134.  The court held the term "earth movement" was ambiguous as to the sand fill.

> [A]ll of the examples of earth movement in the exclusion clearly refer to various types of movements of the solid surface of the earth. The cases [State Farm] cites as holding the earth movement exclusion language is unambiguous and "virtually indistinguishable" from those in this case, in fact, involve water leaks washing out or away from beneath the home, the foundation, slab, footer or other structures "soil," "solid earth," or "ground," which terms clearly suggest the type of earth needed to support such structures-earth's solid surface. In this case, however, there is no evidence that the soil or ground supporting the slab *was washed out or eroded* by the leak in this case.

*Id.* at 135 (emphasis in original).

[7]The Travises offer two other cases in support their claim that the earth movement exclusion is ambiguous:  *Murray*, 509 S.E.2d at 13-15, and *Cox*, 459 S.E.2d at 448.  The rulings in both *Murray* and *Cox* are premised on those courts' conclusion that the lead-in clause to the earth movement exclusion is ambiguous. Because that issue was not argued by the Travises, those cases do not change our conclusion in this case.

*Inc.*, 22 P.3d 1204, 1210 (Okla. 2001) ("[A] determination of liability under the contract is a prerequisite to a recovery for bad faith breach on an insurance contract.").

We **AFFIRM** the judgment of the district court.

ENTERED FOR THE COURT


Stephanie K. Seymour
Circuit Judge