2015 OK 19

Steven L. BROOM, Plaintiff–Appellant,

v.

WILSON PAVING & EXCAVATING, INC., an Oklahoma Corporation, Defendant–Appellant,

and

Mid–Continent Casualty Company, an Oklahoma Corporation, Garnishee–Appellee.

No. 109,813.

Supreme Court of Oklahoma.

April 7, 2015.

Rehearing Denied Aug. 26, 2015.

618

Kevin E. Krahl, Fuller Tubb Bickford & Krahl, PLLC, Oklahoma City, OK, for Plaintiff–Appellant Steven L. Broom.

Paula J. Quillin, Feldman, Franden, Woodard & Farris, Tulsa, OK, for Defendant–Appellant Wilson Paving & Excavating, Inc.

Dean Foote, Law Offices of Dean Foote, PLC, Tulsa, OK, for Defendant–Appellant Wilson Paving & Excavating, Inc.

James K. Secrest, II, Edward J. Main, Benjamin J. Oxford, Secrest, Hill, Butler & Secrest, Tulsa, OK, for Garnishee–Appellee Mid–Continent Casualty Company.

GURICH, J.

### Facts & Procedural History

¶1 Wilson Paving & Excavating, Inc. was one of several subcontractors retained to perform services in connection with a renovation project at Sand Springs Memorial Stadium at Charles Page High School. Specifically, Wilson Paving contracted to dig trenches and lay pipe for a storm drainage system being installed under the school's athletic field. Wilson Paving utilized a local staffing agency, Labor Ready, to secure temporary workers to assist on the project. On or about May 30, 2007, Steven Broom went to the offices of Labor Ready to obtain employment. Broom was directed by Labor Ready to work with Wilson Paving at Sand Springs High School. He reported to the high school and, at the instruction of Wilson Paving, began work laying pipe inside a trench that was approximately five to six feet deep, four to five feet wide, and fifty feet long.[1]

¶2 At approximately 2:30 p.m. that same day, the trench in which Broom was working collapsed twice—the first time covering him in dirt to his waist and the second time covering him in dirt to his neck.[2] Persons on the job site freed Broom from the neck to the waist while waiting on emergency personnel to arrive.[3] Once on the scene, emergency personnel could not enter the trench to rescue Broom until the trench was safely reinforced. During this time, Broom remained buried from the waist down. Emergency personnel eventually removed Broom from the trench, and he was transported to the hospital where he was treated for serious injuries, including rib fractures, collapsed lungs, pulmonary contusions, blood within

---

1. Record on Accelerated Appeal, Ex. 13 at Ex. W (Petition at 2).

2. *Id.* (Petition at 2–3).

3. *Id.*

the chest, fluid around the spleen and kidney, and a left kidney laceration.[4]

¶ 3 The record reflects that before the trench collapsed, one of Wilson Paving's employees, Jack Bailey, was using a backhoe to dig the trench and to retrieve pipe from an area adjacent to the trench.[5] Mr. Bailey would dig a twenty-foot section of trench, then Mr. Bailey, Broom, and another employee of Wilson Paving, Harley Nipper, would place the pipe in the trench. Mr. Bailey would then use the backhoe to put a few feet of dirt on top of the pipe to secure it, while Broom and Mr. Nipper did "the hand work" inside the trench, "leveling it and walking it in."[6] After completing a twenty-foot section, they would repeat the process.[7] At some point, either while Mr. Bailey was in the process of digging another twenty-foot section or while he was retrieving pipe, the trench collapsed on Broom while he was working therein.[8]

¶ 4 Wilson Paving believed the trench collapse was due to the work of another contractor who had allegedly removed a monument and flag pole near the area of the collapse but failed to alert Mr. Bailey of such before he began digging the trench.[9] Wilson Paving believed the removal of such increased the moisture in the soil, causing a latent hazard in the area.[10] Upon investigation of the trench collapse, OSHA cited Wilson Paving with five violations including failure to instruct employees in the recognition and avoidance of unsafe conditions, failure to protect employees with protective helmets, lack of safe means of egress out of the trench, failure to place and keep excavated materials at least two feet from the edge of the excavation, and failure to provide an adequate protective system to protect employees in the excavation.[11]

¶ 5 Broom pursued and received workers' compensation benefits from Labor Ready for the injuries he sustained in the accident. Labor Ready was identified as Broom's employer in the workers' compensation action. Wilson Paving was not a party to the action and paid no workers' compensation benefits to Broom. Broom also sued Wilson Paving for his injuries in a third-party action[12] in the District Court of Tulsa County.

## Mid–Continent Casualty Company's Declaratory Action in Tulsa County in February 2008, CJ–2008–1532

¶ 6 Wilson Paving purchased a Commercial General Liability Policy from Mid–Continent Casualty Company for the period of April 1, 2007, to April 1, 2008. The policy was in effect at the time of Broom's injuries.[13] In

4. *Id.*

5. Record on Accelerated Appeal, Ex. 13, at Ex. 12 (Deposition of Jack Bailey at 29–36).

6. *Id.* (Deposition of Jack Bailey at 128–29).

7. *Id.* (Deposition of Jack Bailey at 38–40, 129).

8. *Id.* (Deposition of Jack Bailey at 69–70).

9. Record on Accelerated Appeal, Ex. 13 at Ex. X (Deposition of Art Wilson at 65–66).

10. *Id.* (Deposition of Art Wilson at 66).

11. *Id.* (Deposition of Art Wilson at 17–19). Wilson Paving paid the OSHA citations and did not appeal. *Id.*

12. *See* 85 O.S. Supp.2005 § 44, which provides in part:
(a) If a worker entitled to compensation under the Workers' Compensation Act is injured or killed by the negligence or wrong of another not in the same employ, such injured worker shall, before any suit or claim under the Work-

ers' Compensation Act, elect whether to take compensation under the Workers' Compensation Act, or to pursue his remedy against such other. Such election shall be evidenced in such manner as the Administrator may by rule or regulation prescribe. If he elects to take compensation under the Workers' Compensation Act, the cause of action against such other shall be assigned to the insurance carrier liable for the payment of such compensation, and if he elects to proceed against such other person or insurance carrier, as the case may be, the employer's insurance carrier shall contribute only the deficiency, if any, between the amount of the recovery against such other person actually collected, and the compensation provided or estimated by the Workers' Compensation Act for such case.

13. The policy applicable to Broom's accident was a renewal of the policy based upon the same coverage of grading of land construction for which Wilson Paving paid the same premium the year before. Record on Accelerated Appeal, Ex. 14 (Defendant Wilson Paving & Excavating, Inc. Motion to Reconsider at 1).

February of 2008, Mid–Continent filed a declaratory action in Tulsa County, Case No. CJ–2008–1532, seeking a ruling from the district court that it had no duty to defend or indemnify Wilson Paving under the policy with respect to any claims asserted by Broom. At the time of the declaratory judgment action, Broom had not yet sued Wilson Paving in the district court. Upon a renewed Motion for Summary Judgment by Mid–Continent, the Honorable Daman H. Cantrell, found Mid–Continent had a duty to defend Wilson Paving and that "[t]he issue regarding a duty to indemnify [could] be reurged after the matter ha[d] been tried on the merits."[14] Judge Cantrell did not make any determination as to coverage under Mid–Continent's policy. Upon motion by Mid–Continent, Judge Cantrell certified the ruling for interlocutory appeal. Mid–Continent petitioned this Court for certiorari review of the certified interlocutory order, Case No. 108,476, but moved to dismiss the petition prior to this Court's consideration of the Petition for Certiorari. This Court, in an Order filed October 25, 2010, dismissed Mid–Continent's appeal in Case No. 108,476.

¶ 7 On January 5, 2011, Wilson Paving filed a Motion for Partial Summary Judgment. The trial court, on November 10, 2011, again found Mid–Continent had a duty to defend under the policy but did not make any determination as to coverage under Mid–Continent's policy. Upon motion by Mid–Continent, the trial court again certified the order for interlocutory appeal on January 17, 2012. Mid–Continent again filed a Petition for Certiorari to review the certified interlocutory order, which was denied by this Court by Order on March 12, 2012, in Case No. 110,364. The last docket entry in CJ–2008–1532, filed on April 19, 2012, was this Court's mandate dismissing the appeal in Case No. 110,364.

### American Interstate Insurance Company's Declaratory Action in Federal Court in June 2009

¶ 8 In addition to Mid–Continent's Commercial General Liability Policy, Wilson Paving also purchased a Workers' Compensation and Employers Liability Insurance Policy from American Interstate Insurance Company for the period of October 1, 2006, to October 1, 2007. That policy was also in effect at the time of Broom's injuries. On June 3, 2009, AIIC filed a declaratory judgment action in the U.S. District Court for the Northern District of Oklahoma, seeking a declaration regarding its rights and responsibilities under the AIIC policy. Both Wilson Paving and Broom were parties to the action. Mid–Continent was not a party to the action and coverage under the Mid–Continent policy was not at issue. AIIC, Wilson Paving, and Broom agreed that the workers' compensation insurance coverage provided for in Part One of the AIIC policy did not apply in the case. At issue was Part Two of the policy—the Employers Liability Policy—which applied to bodily injury to an employee of the insured.

¶ 9 AIIC moved for summary judgment, arguing that although the AIIC policy provided coverage for bodily injury to an employee caused by accident or disease, the AIIC policy specifically excluded from coverage "bodily injury intentionally caused or aggravated by you [the insured]."[15] The Honorable James H. Payne found Broom had only alleged intentional conduct in the state court litigation, and as such, Broom's injuries were excluded from coverage under AIIC's policy because the policy did not cover bodily injury intentionally caused or aggravated by the insured and the "allegations against Wilson Paving, if true [were] clearly not for bodily injury caused by accident or 'an unknown cause,'" as required for coverage under the policy.[16] The ruling by Judge Payne

---

14. Record on Accelerated Appeal, Ex. 6 at Ex. 9 (Order, CJ–2008–1532 (Nov. 18, 2009)).

15. Record on Accelerated Appeal, Ex. 6 at Ex. 20 (American Interstate Insurance Company Policy at 3).

16. Record on Accelerated Appeal, Ex. 9 at Ex. A (Opinion and Order at 10, *Am. Interstate Ins.*

*Co. v. Wilson Paving & Excavating, Inc. and Steven L. Broom,* Case No. 09–CV–342–JHP, 2010 WL 2624133 (N.D.O.K. June 25, 2010)). As we discuss below, we disagree with Judge Payne's assessment of Broom's claims against Wilson Paving in the district court. Broom alleged intentional conduct on the part of Wilson Paving under *Parret v. UNICCO Serv. Co.,* 2005

was not appealed.[17]

### *Broom v. Wilson Paving, CJ–2009–2127, Filed in March 2009*

¶ 10 In March of 2009, Broom sued Wilson Paving in the District Court of Tulsa County, Case No. CJ–2009–2127, alleging Wilson Paving "owed Plaintiff a non-delegable duty to provide employees a safe place in which to work and breached that duty by ignoring standards set by OSHA for safety in trenches knowing injury or death was certain and/or substantially certain to occur with this combination of safety measures being ignore."[18] Broom also alleged Wilson Paving knew or should have known "the manner in which they were requiring Plaintiff to work presented a substantial certainty of injury or death to Plaintiff and/or others similarly situated."[19]

¶ 11 Although Judge Cantrell ruled against Mid–Continent in the declaratory judgment action, CJ–2008–1532, and found that Mid–Continent had a duty to defend Wilson Paving, Mid–Continent never provided a defense to Wilson Paving. AIIC "agreed to provide a defense to Wilson Paving ... under a Reservation of Rights Letter until the coverage questions" raised in the federal court action were resolved.[20] After the ruling by Judge Payne in June of 2010, AIIC discontinued its participation in Broom's suit against Wilson Paving.

¶ 12 On July 26, 2010, the Honorable Jefferson D. Sellers conducted a bench trial and found Wilson Paving liable for Broom's injuries. He rendered a $1,150,000.00 judgment in favor of Broom, finding:

Plaintiff was seriously injured on May 30, 2007, while working under the direction and control of Defendant Wilson Paving and Excavating, Inc., on a temporary basis to fulfill a short-term need. The actions of Defendant Wilson Paving & Excavating, Inc., an Oklahoma corporation, on May 30, 2007, constituted negligence and negligence per se which caused injury to the Plaintiff.

Further, the Court finds that although Defendant Wilson Paving & Excavating, Inc. did not expect or intend to injure the Plaintiff, Defendant knew serious injury to the Plaintiff was substantially certain to occur.[21]

Neither Broom nor Wilson Paving appealed the judgment.

### *Post–Judgment Garnishment Proceedings in Broom v. Wilson Paving, CJ–2009–2127*

¶ 13 On August 31, 2010, Broom sought post-judgment garnishment of Wilson Paving's Commercial General Liability Policy issued by Mid–Continent. Mid–Continent resisted garnishment, arguing Broom's injuries were excluded from coverage under the policy, relying on the "earth movement" exclusion and the "expected or intended injury" exclusion. Mid–Continent also argued the declaratory judgment in favor of AIIC in federal court was determinative of coverage under Mid–Continent's policy. Judge Sellers granted summary judgment to Mid–Continent stating:

The Court further finds and reiterates that, based on the materials presented and the arguments made, the injury to plaintiff, Steven L. Broom, was an accident and was neither intentional nor expected by Wilson Paving. The Court holds that, al-

OK 54, 127 P.3d 572, as well as negligence and negligence per se on the part of Wilson Paving. *See* Record on Accelerated Appeal, Ex. 13 at Ex. W (Petition at 5); Record on Accelerated Appeal, Ex. 7 at Ex. 21 (Pre–Trial Conference Order at 3). Further, we conclude that Broom was not an employee of Wilson Paving, and therefore, no coverage would be available for a non-employee under the AIIC policy.

17. Record on Accelerated Appeal, Ex. 8 (Garnishee's Preliminary Response in Opposition to Plaintiff's Motion for Summary Judgment at 14).

18. Record on Accelerated Appeal, Ex. 13 at Ex. W (Petition at 5).

19. Record on Accelerated Appeal, Ex. 13 at Ex. W (Petition at 4).

20. Record on Accelerated Appeal, Ex. 9 at Ex. A (Opinion and Order at 4, *Am. Interstate Ins. Co. v. Wilson Paving & Excavating, Inc. and Steven L. Broom*, Case No. 09–CV–342–JHP (N.D.O.K. June 25, 2010)).

21. Record on Appeal, Ex. 2 (Journal Entry of Judgment at 1).

though the Court also found there was a *Parret* tort, the finding of a *Parret* tort is not inconsistent with the Court's finding that the injury was neither expected nor intended. **The Court finds that Plaintiff Broom would be covered under Mid–Continent's policy as a temporary worker, but for the subsequent earth movement exclusion.**[22]

¶ 14 Judge Sellers also found the declaratory judgment in favor of AIIC in federal court was not determinative of the case because Mid–Continent's policy was a different policy than that adjudicated by the federal court. The trial court also held that if Mid–Continent wished to attack the July 28, 2010 judgment entered by the court, it would have had to move to vacate that judgment. Because it did not move to vacate the judgment or participate in the proceeding even though directed to do so by Judge Cantrell, the judgment was final and not subject to attack in the garnishment proceeding. The trial court denied motions to reconsider, and Wilson Paving and Broom filed a joint appeal of the trial court's decision. Mid–Continent also filed a counter-appeal.

¶ 15 On appeal, COCA found the earth movement exclusion did not prevent coverage for Broom's injuries. However, COCA affirmed the judgment of the trial court on different grounds, finding actual knowledge that an injury was substantially certain to occur triggered the expected or intended injury exclusion. Wilson Paving and Broom jointly petitioned this Court for certiorari review. We granted review on February 4, 2013.

### Standard of Review

■ ¶ 16 In this case, the propriety of the trial court's denial of the motions to reconsider filed by Broom and Wilson Paving rest on the correctness of the trial court's underlying decision granting summary judgment in favor of Mid–Continent.[23] An order sustaining summary judgment in favor of a litigant presents solely a legal matter. *Sheffer v. Carolina Forge Co.*, 2013 OK 48, ¶ 10,

306 P.3d 544, 547–48. Questions of law mandate a de novo standard of review, which affords this Court with plenary, independent, and non-deferential authority to examine the issues presented. *Id.*

### Analysis

### The AIIC Policy and the Mid–Continent Policy Are Fundamentally Different Polices Designed to Insure Different Aspects of Wilson Paving's Business

¶ 17 Wilson Paving purchased a Workers' Compensation and Employers Liability Insurance Policy from AIIC for the period of October 1, 2006, to October 1, 2007. Wilson Paving purchased the AIIC policy to cover injuries to its *employees* while on the job. The AIIC policy provides:

PART ONE

WORKERS COMPENSATION INSURANCE

A. How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

. . . .

PART TWO

EMPLOYERS LIABILITY INSURANCE

A. How This Insurance Applies

This employers liability insurance applies to **bodily injury by accident or bodily injury by disease.** Bodily injury includes resulting death.

1. **The bodily injury must arise out of and in the course of the injured employee's employment by you.**

---

**22.** Record on Appeal, Ex. 20 (Order of Summary Judgment at 2) (emphasis added).

**23.** *Smith v. City of Stillwater*, 2014 OK 42, ¶ 10–11, 328 P.3d 1192, 1196–97.

2. The employment must be necessary or incidental to your work in a state or territory listed in item 3.A of the information page.

3. Bodily injury by accident must occur during the policy period.... [24]

Part Two, Subsection B of the AIIC policy specifically limits coverage to "[a]ll sums you legally must pay as damages because of bodily injury to your **employees,** provided the bodily injury is covered by the Employer Liability insurance." [25]

¶ 18 **In contrast, Mid–Continent's policy, by definition, specifically excluded from coverage bodily injury to employees during work-related activities:**

2. Exclusions
This insurance does not apply to:

. . . .

e. Employers Liability
"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business ... [26]

¶ 19 Wilson Paving purchased the Mid–Continent policy to "cover any and all other claims that would not be covered by [the AIIC] workers' compensation insurance." [27] A demand letter from Art Wilson, the owner of Wilson Paving, to Doug Sawyer, a Senior Claims Representative for Mid–Continent, reflected such expectations: "In my 20 years or so of doing business the standards of being able to work a project or a contract to do the work always requires insurance.... My company acquired such insurance for doing such work.... Mid–Continent Casualty Company was my safeguard in just this kind of situation.... The insurance coverage is what I was paying for and should receive nothing less." [28]

¶ 20 Wilson Paving purchased two separate insurance policies to insure against all possible risks facing its paving and excavation business: one which covered injuries to its employees (AIIC), and a second policy (Mid–Continent) to cover injuries to the general public, and by definition, injuries to temporary workers. Because the AIIC policy only covered injuries to Wilson Paving's employees, Wilson Paving had to purchase the separate Mid–Continent policy to insure against all possible risks facing its paving and excavation business, including injuries to nonemployees and temporary workers such as Broom. By purchasing the additional Mid–Continent policy Wilson Paving did exactly what it should have done to responsibly conduct its paving and excavation business.

*The Declaratory Judgment in Favor of AIIC in Federal Court is Not Determinative of Coverage Under the Mid–Continent Commercial General Liability Policy*

¶ 21 Mid–Continent asserts that the judgment in federal court in favor of AIIC is determinative of coverage under Mid–Continent's policy "under principles of *res judicata,* claim preclusion or issue preclusion." [29] More specifically, Mid–Continent argues that because the "terms, provisions, conditions and exclusions of Mid–Continent's Commercial General Liability Policy ... are functionally equivalent to the provisions of American Interstate's Employers' Liability Policy," Wilson Paving and Broom are bound by the decision of the federal court and Mid–Continent does not owe a duty to defend or indem-

---

24. Record on Accelerated Appeal, Ex. 6 at Ex. 20 (American Interstate Insurance Company Policy at 1–2) (emphasis added).

25. Record on Accelerated Appeal, Ex. 6 at Ex. 20 (American Interstate Insurance Company Policy at 2) (emphasis added).

26. Record on Accelerated Appeal, Ex. 6 at Ex. 1 (Mid–Continent Commercial Lines Policy at 19–20).

27. Record on Accelerated Appeal, Ex. 11 at Ex. 8 (Defendant Wilson Paving & Excavating, Inc., Response to Plaintiff's Motion to Reconsider and Renewed Motion for Summary Judgment and Defendant's Motion for Rule 13(d) Relief at 1).

28. Record on Accelerated Appeal, Ex. 11 at Ex. 1 (Letter from Arthur Wilson to Doug Sawyer dated June 25, 2010).

29. *See* Counter–Petition in Error, Ex. C at 1.

nify Wilson Paving, and Broom may not garnish the policy.[30]

¶ 22 However, as pointed out above, the AIIC policy and the Mid–Continent policy are fundamentally different polices designed to insure different aspects of Wilson Paving's business.[31] Although both Wilson Paving and Broom were parties to the AIIC action in federal court, coverage under the Mid–Continent policy was *not* at issue in that case. Neither Wilson Paving nor Broom had the opportunity in the AIIC case to fully and fairly litigate whether the Mid–Continent policy provided coverage for Broom's injuries. *Miller v. Miller*, 1998 OK 24, ¶ 26, 956 P.2d 887, 897. The declaratory judgment in favor of AIIC in federal court is not determinative of coverage under the Mid–Continent Commercial General Liability Policy.

### Broom was a Temporary Worker for Wilson Paving at the Time of the Incident and Was Covered Under Mid–Continent's Policy

 ¶ 23 Mid–Continent also argues that Judge Payne's finding in the federal court action that Broom was an employee of Wilson Paving at the time of the incident is binding in the garnishment proceeding against Mid–Continent.[32] We first note that Judge Payne did not conclusively decide that Broom was an employee of Wilson Paving. He assumed for purposes of deciding the motion for summary judgment that at the time of his injuries Broom was a loaned servant of Wilson Paving sufficient to be an employee *under the AIIC policy*.[33] Regardless, as discussed above, coverage under the Mid–Continent policy was *not* at issue in the federal court proceeding, and whether Broom was considered an employee *under Mid–Continent's* policy was **not** litigated by the parties. As such, Judge Payne's finding in the federal court action that Broom was an employee of Wilson Paving at the time of the incident was not binding in subsequent proceedings to determine coverage under Mid–Continent's policy,[34] and the trial court was free to determine Broom's status as it related to the Mid–Continent policy.

¶ 24 In doing so, the court found that "Plaintiff was seriously injured on May 30, 2007, while working under the direction and control of Defendant Wilson Paving and Excavating, Inc., **on a temporary basis to fulfill a short-term need.**"[35] Under Mid–Continent's policy, "temporary worker" is defined as "a person who is furnished to you

---

**30.** Record on Accelerated Appeal, Ex. 8 (Garnishee's Preliminary Response in Opposition to Plaintiff's Motion or Summary Judgment at 15).

**31.** We also note that the language of the exclusion in the American Interstate policy excludes from coverage "bodily injury intentionally caused or aggravated by you," whereas Mid–Continent's policy excludes from coverage "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." This exclusionary language is not identical, and case law from other jurisdictions reveals that such differences in language can be dispositive in determining whether coverage exists under the particular facts of a case. *Compare Royal Indem. Co. v. Soneco/Northeastern Inc.*, 183 F.Supp.2d 526 (D.Conn.2002) (finding policy excluding from coverage "bodily injury intentionally caused or aggravated by you" did not preclude coverage for employee's injuries when no proof that employer actually engaged in conduct with the intent of causing the injuries) *with Holz–Her U.S., Inc. v. U.S. Fid. and Guar. Co.*, 141 N.C.App. 127, 539 S.E.2d 348 (2000) (finding policy that excluded from coverage injuries "expected or intended from the insured's point of view" precluded coverage when such purposeful and intentional acts were so substantially certain to cause injury and damage that one could infer an intent to injure).

**32.** Record on Accelerated Appeal, Ex. 12 at 3–4 (Garnishee's Supplemental Response in Opposition to Plaintiff's Motion for Summary Judgment at 3–4). Mid–Continent argues that if Broom was an employee of Wilson Paving at the time of the incident, Broom's only recovery against Wilson Paving in the district court was for an intentional tort under *Parret v. UNICCO Serv. Co.*, 2005 OK 54, 127 P.3d 572.

**33.** Record on Accelerated Appeal, Ex. 9 at Ex. A (*Am. Interstate Ins. Co. v. Wilson Paving & Excavating, Inc. and Steven L. Broom*, Case No. 09–CV–342–JHP at 5 (N.D.O.K. June 25, 2010).) It is clear there would be no coverage under the AIIC policy if Broom was not an employee of Wilson Paving. Broom's counsel alleged alternative legal theories as to Broom's status since neither one of Wilson Paving's insurers admitted coverage.

**34.** *Miller*, 1998 OK 24, ¶ 26, 956 P.2d at 897.

**35.** Record on Accelerated Appeal, Ex. 2 (Journal Entry of Judgment at 1) (emphasis added).

to substitute for a permanent 'employee' on leave or to meet seasonal or **short-term** workload conditions."[36] In the Order granting summary judgment to Mid–Continent, the trial court specifically found **"Plaintiff Broom would be covered under Mid–Continent's policy as a temporary worker,** but for the subsequent earth movement exclusion."[37]

¶ 25 Mid–Continent asserts the trial court erred by finding Broom was covered under the policy as a temporary worker because there was no insuring agreement granting coverage to a temporary worker, and instead, temporary worker is merely a defined phrase that effects the application of certain exclusions.[38] Although Mid–Continent's policy specifically excluded from coverage bodily injury to *employees* during work-related activities,[39] the policy does not specifically exclude from coverage bodily injury to *temporary workers* during work-related activities. Nowhere in the insurance policy do we find any language indicating a temporary worker would not be covered under the policy. Our case law is clear that "if an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctly reveals its stated purpose." *Spears v. Shelter Mut. Ins. Co.,* 2003 OK 66, ¶ 7, 73 P.3d 865, 868 (citing *Max True Plastering Co. v. U.S. F. & G. Co.,* 1996 OK 28, 912 P.2d 861).[40] We find no error in the trial court's conclusion that at the time of the incident, Broom was a temporary worker for Wilson Paving and would be covered as such under Mid–Continent's policy.

### Negligence was the Basis of Broom's Recovery Against Wilson Paving in the District Court

¶ 26 Because Broom was a temporary worker and was not considered Wilson Paving's employee at the time of the incident, Wilson Paving was not afforded any tort immunity in the district court under the workers' compensation exclusive remedy provision.[41] Nevertheless, Mid–Continent argues that Wilson Paving falls within Broom's employment hierarchy so that Wilson Paving is immune from any liability apart from that imposed by the Workers' Compensation Act. Mid–Continent cites generally to 85 O.S. §§ 11–12 as authority for its argument,[42] but points to nothing in the record to specifically to support this conclusion. In *Hammock v. U.S.,* 2003 OK 77, ¶ 7, 78 P.3d 93, 96–97, we stated that "if another employer on the same job as the injured worker qualifies as the injured worker's 'principal employer' (also commonly referred to as a '**statutory employer**') then such employer *is* liable for compensation under the Act for that worker's injuries and therefore *is* immune from tort liability asserted by the injured worker." (emphasis added).

¶ 27 The trial court made no determination that Wilson Paving was Broom's "statutory employer" for workers' compensation purposes, and we decline to make such a deter-

---

**36.** Record on Accelerated Appeal, Ex. 6 at Ex. 1 (Mid–Continent Commercial Lines Policy at 32) (emphasis added).

**37.** Record on Accelerated Appeal, Ex. 20 (Order of Summary Judgment at 2) (emphasis added).

**38.** *See* Counter–Petition in Error, Ex. C at 3–4.

**39.** *See* Record on Accelerated Appeal, Ex. 6 at Ex. 1 (Mid–Continent Commercial Lines Policy at Form ML 12 76 (11 03)).

**40.** *See also Haworth v. Jantzen,* 2006 OK 35, ¶ 17, 172 P.3d 193, 197 ("When an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctly reveals its stated purpose.").

**41.** *See* 85 O.S. Supp.2006 § 11; 85 O.S. Supp. 2005 § 12. Broom and Wilson Paving argue that Broom's cause of action against Wilson Pav-

ing under *Parret v. UNICCO Serv. Co.,* 2005 OK 54, 127 P.3d 572, was only if Broom was determined to be an employee of Wilson Paving at the time of the incident. If Broom was not an employee of Wilson Paving at the time of the incident, Broom and Wilson Paving argue Broom's cause of action against Wilson Paving was for negligence. "[A] party litigant may plead, and rely on at trial, alternative and inconsistent theories or defenses under the Oklahoma Pleading Code." *State ex rel. Oklahoma Corp. Comm'n v. McPherson,* 2010 OK 31, ¶ 22, 232 P.3d 458, 464.

**42.** Record on Accelerated Appeal, Ex. 8 (Garnishee's Preliminary Response in Opposition to Plaintiff's Motion for Summary Judgment at 3); Answer of Appellee Mid–Continent Casualty Company to Joint Petition for Certiorari at 1.

mination when the undisputed record in this case reveals otherwise. Labor Ready, not Wilson Paving, was identified as Broom's employer in the workers' compensation action. Wilson Paving did not participate in the workers' compensation action and paid no workers' compensation benefits to Broom.

¶ 28 The contract between Wilson Paving and Labor Ready stated as part of the "Conditions of Service" that "[c]ustomer [Wilson Paving] specifically assumes and agrees to defend, indemnify and hold harmless Labor Ready from any claims for bodily injury (including death) or property damage made or caused by Customer or Customer's employees, and **Customer agrees to waive any immunity provided by Workers' Compensation** or other industrial insurance laws."[43] Wilson Paving was not afforded any tort immunity in the district court under the workers' compensation laws, and as such, Broom had an action for negligence against Wilson Paving in the district court.

¶ 29 Broom alleged in his Petition that Wilson Paving **"owed Plaintiff a non-delegable duty** to provide employees a safe place in which to work and **breached that duty** by ignoring standards set by OSHA for safety in trenches knowing injury or death was certain and/or substantially certain to occur with this combination of safety measures being ignored."[44] The Pre–Trial Conference Order dated June 30, 2010, specifically lists as grounds for recovery negligence and negligence per se.[45] The Journal Entry of Judgment expressly ruled that "[t]he actions of Defendant Wilson Paving & Excavating, Inc., ... constituted **negligence and negligence**

per se which caused injury to the Plaintiff."[46] In the Order granting summary judgment to Mid–Continent, the trial court stated: "The Court further finds and reiterates that, based on the materials presented and the arguments made, the injury to Plaintiff, Steven L. Broom, **was an accident** and was neither intentional nor expected by Wilson Paving."[47] We find that negligence was the basis of Broom's recovery against Wilson Paving in the district court.[48]

### Coverage for Broom's Injuries is Not Precluded Under Mid–Continent's Commercial General Liability Policy

 ¶ 30 We turn now to the language in Mid–Continent's Commercial General Liability Policy. When addressing a dispute concerning the language of an insurance policy, this Court must first determine as a matter of law whether the policy language is ambiguous. *Wynn v. Avemco Ins. Co.*, 1998 OK 75, ¶ 17, 963 P.2d 572, 575. "Insurance contracts are ambiguous only if they are susceptible to two constructions." *Max True Plastering Co.*, 1996 OK 28, ¶ 20, 912 P.2d at 869. "[W]e accept the contract language in its plain, ordinary, and popular sense." *Haworth v. Jantzen*, 2006 OK 35, ¶ 17, 172 P.3d 193, 197. "We do not indulge in forced or constrained interpretations to create and then to construe ambiguities in insurance contracts." *Max True Plastering Co.*, 1996 OK 28, ¶ 20, 912 P.2d at 869.

 ¶ 31 If the language in an insurance contract is deemed ambiguous or exclu-

**43.** Record on Accelerated Appeal, Ex. 6 at Ex. 3 (Defendant Steven L. Broom's Response to Plaintiff's Motion to for Summary Judgment, Ex. 1).

**44.** Record on Accelerated Appeal, Ex. 13 AT Ex. W (Petition at 5) (emphasis added).

**45.** Record on Accelerated Appeal, Ex. 7 at Ex. 21 (Pre–Trial Conference Order at 3).

**46.** Record on Accelerated Appeal, Ex. 2 (Journal Entry of Judgment at 1) (emphasis added).

**47.** Record on Accelerated Appeal, Ex. 20 (Order of Summary Judgment at 2) (emphasis added). Mid–Continent's insurance policy provided coverage for " 'bodily injury or 'property damage' ... caused by an 'occurrence' that takes place in the 'coverage territory.' " Record on Accelerated Appeal, Ex. 6 at Ex. 1 (Mid–Continent Commercial Lines Policy at 19). "Occurrence" is defined under the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Record on Accelerated Appeal, Ex. 6 at Ex. 1. (Mid–Continent Commercial Lines Policy at 31).

**48.** Because the trial court found Broom was a temporary worker for Wilson Paving and not its employee, it was not necessary for the trial court to decide whether Wilson Paving acted with knowledge that injury to Broom was substantially certain to occur under *Parret*. Any finding or pronouncement in this regard by the trial court was surplusage.

sions in the policy are masked by technical or obscure language or hidden in a policy's provisions, this Court applies the reasonable expectations doctrine to determine the intent of the parties and to interpret the terms of the insurance contract. *Max True Plastering Co.*, 1996 OK 28, ¶ 17, 912 P.2d at 868. Under the reasonable expectations doctrine, "courts must examine the policy language objectively to determine whether an insured could reasonably have expected coverage." *Id.* ¶ 8, 912 P.2d at 865. "[U]nclear or obscure clauses in an insurance policy will not be permitted to defeat coverage which is objectively reasonably expected by a person in the position of the insured." *Spears v. Shelter Mut. Ins. Co.*, 2003 OK 66, ¶ 7, 73 P.3d 865, 868. Ambiguities are construed against the insurer and in favor of the insured. *Haworth*, 2006 OK 35, ¶ 17, 172 P.3d 193, 197.

### 1. The Expected or Intended Injury Exclusion

 ¶ 32 The "expected or intended injury" exclusion in Mid–Continent's policy states:

2. Exclusions

This insurance does not apply to:

a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.[49]

Because negligence was the basis of Broom's recovery against Wilson Paving in the district court, such must be considered in deciding whether the expected or intended injury clause in Mid–Continent's policy precludes coverage for Broom's injuries in this case. Oklahoma law has long recognized that "[n]egligence, in its generally accepted meaning, has in it no element of willfulness; but involves a state of mind which is negative; a state of mind in which the person fails to give attention to the character of his acts or omissions or to weigh their probable or possible consequences." *Kile v. Kile*, 1936 OK 748, ¶ 7, 178 Okla. 576, 63 P.2d 753, 755. Negligence excludes the idea of intentional wrong

and when "a person wills to do an injury, he ceases to be negligent." *St. Louis & S.F.R. Co.*, 1918 OK 367, ¶ 15, 68 Okla. 301, 174 P. 1036, 1040. The very nature of negligence as a basis of recovery is inconsistent with activity that would produce an "expected or intended" injury under the language in the Mid–Continent policy. We conclude that coverage for Broom's injuries is not precluded under the expected or intended injury exclusion in Mid–Continent's policy.

### 2. The Earth Movement Exclusion

 ¶ 33 Earth movement exclusions in insurance policies "generally refer to and have historically related to catastrophic and extraordinary calamities such as earthquakes and landslides." *Peters Twp. Sch. Dist. v. Hartford Accident and Indem. Co.*, 833 F.2d 32, 35 (3d Cir.1987). Such exclusionary provisions were included in insurance policies to protect insurance companies from having to pay out on policies when catastrophic events, such as earthquakes or floods, caused damage to numerous policyholders. *Powell v. Liberty Mut. Fire Ins. Co.*, — Nev. —, 252 P.3d 668, 672–673 (2011). "[T]he reason for the insertion of the exclusionary clause ... in all risk insurance policies is to relieve the insurer from occasional major disasters which are almost impossible to predict and thus to insure against." *Wyatt v. Nw. Mut. Ins. Co.*, 304 F.Supp. 781, 783 (D.Minn.1969).

¶ 34 The earth movement exclusion in Mid–Continent's policy states:

EXCLUSION—INJURY OR DAMAGE FROM EARTH MOVEMENT

. . .

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" arising out of, caused by, resulting from, contributed to, aggravated by, or related to earthquake, landslide, mud flow, subsidence, settling, slipping, falling away, shrinking, expansion, caving in, shifting, eroding, rising, tilting

---

**49.** Record on Accelerated Appeal, Ex. 6 at Ex. 1 (Mid–Continent Commercial Lines Policy at 19– 20).

or any other movement of land, earth or mud.[50]

Mid–Continent argues a trench collapse is considered "earth movement" under the policy and coverage is excluded. Wilson Paving and Broom argue the earth movement exclusion applies only to earth movement caused by **natural events**, not to earth movement caused by the construction of a trench, so coverage is not precluded. This Court has not specifically interpreted an earth movement exclusion clause in the context of a commercial general liability policy.

¶ 35 Decisions from other jurisdictions indicate that earth movement exclusions, similar to the exclusion found in the Mid–Continent policy, exclude only naturally occurring earth movement. In *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645 (Minn.1986), the Supreme Court of Minnesota reviewed a "Builder's Risk" insurance policy issued to the general contractor on a construction project wherein an addition was being built onto a community center. After a foundational wall of the community center collapsed due to the actions of several subcontractors working around the job site, the contractor sought to recover under the policy. The insurance company denied coverage in part under the policy's earth movement exclusion, which provided that a loss was excluded if caused by "[e]arthquake, volcanic eruption, landslide, or any other earth movement." *Id.* at 652. The court found that the "context of the language relating to earthquakes or other major ground movements indicated the exclusion was meant to apply only to natural disasters and not to earth movements caused by human forces operating above the ground." *Id.* The court held that coverage was not excluded under the earth movement provision because the earth movement exclusion applied only to earth movement cause by widespread natural disasters and not to those caused by human forces. *Id.* at 653.

¶ 36 In *Rankin v. Generali–U.S. Branch*, 986 S.W.2d 237 (Tenn.Ct.App.1998), the front basement wall of a building partially collapsed and was damaged as a result of heavy machinery parked near the building. The owner of the building sought coverage under his insurance policy, but the insurance company denied coverage in part under the earth movement exclusion, which excluded coverage for "[a]ny earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting." The Court of Appeals of Tennessee reviewed the earth movement exclusion and found that because the exclusion included terms such as earthquake, mine subsidence, and landslide, all naturally occurring events, it was " 'apparent that the policy [was] intended to exclude only "occasional major disasters" ... rather than "human action ... occurring within the immediate vicinity of the danger." ' " *Rankin*, 986 S.W.2d at 239 (quoting *Winters v. Charter Oak Fire Ins. Co.*, 4 F.Supp.2d 1288 (D.N.M. 1998).) The court held the earth movement exclusion did not preclude coverage in the case. *Id.* at 240.

¶ 37 In *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So.2d 1082 (Fla.2005), nearby blasting activities caused structural damage to the insured's home. The homeowners sought coverage under their all-risk insurance policy, but the insurance company denied coverage under the earth movement exclusion. The exclusion precluded coverage for "[e]arth [m]ovement, meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting." *Id.* at 1084. The Supreme Court of Florida found that "the overwhelming majority of courts interpreting earth movement exclusions that do not contain lead-in language precluding coverage for damage from earth movement 'regardless' of its cause have concluded that such exclusions apply only to earth movement that arises from natural events." *Id.* at 1087. The court concluded that "absent specific language in the policy to the contrary, an earth movement exclusion is limited to damage

---

**50.** Record on Accelerated Appeal, Ex. 6 at Ex. 6 (Defendant Wilson Paving & Excavating, Inc., Response to Plaintiff's Motion to Reconsider and Renewed Motion for Summary Judgment and Defendant's Motion for Rule 13(d) Relief at Ex. 4).

caused by natural phenomena." [51]

¶ 38 Other jurisdictions have found similar exclusions ambiguous "as to what type of damage earth movement exclusions apply because such exclusions typically only list naturally occurring events in their definitions of what constitutes earth movement, but earth movement can be caused by unnatural events as well." *Powell*, 252 P.3d at 673. In *Powell*, a water pipe exploded in the Plaintiff's house, flooding the basement and causing a shift in the foundation and extensive cracking and separation in the walls and ceiling. The insurance company denied coverage under the earth movement exclusion, which excluded coverage for "[e]arth movement, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide, mine subsidence; mudflow; earth sinking, rising or shifting." *Id.* at 670. The Supreme Court of Nevada found that because "a generalized reference to earth sinking, rising, and shifting without clarifying the cause for such sinking, rising, or shifting could include both natural and human-caused events," the exclusion was ambiguous as to what "precisely earth movement is when it is not a type of widespread, calamitous event." *Id.* at 673. The court reversed summary judgment in favor of the insurance company, finding that because the policy "does not include clear and unambiguous language, subject to only one interpretation, that clearly excludes the damage here, [the insurance company] is unable to deny coverage of the claim if the district court determines that the claim stems from damage caused by soil movement as a direct result of the ruptured pipe." *Id.* at 674.

¶ 39 In *Sentinel Assocs. v. Am. Mfrs. Mut. Ins. Co.*, 804 F.Supp. 815 (E.D.Va.1992), a shopping center insured by an all-risk insurance policy was allegedly damaged by a broken water pipe, which leaked into the soil beneath one of the stores located in the shopping center. The insurance company denied coverage for the damage relying on the earth movement exclusion in the policy, which excluded coverage for " '[a]ny earth movement (other than sinkhole collapse) such as an earthquake, landslide, or earth sinking, rising or shifting.' " *Id.* at 816. The court rejected the insurance company's argument that the clause clearly and unambiguously precluded coverage for any form of earth movement regardless of its cause or scope. *Id.* at 818. The court found the policy's language was ambiguous and "clearly [could] be understood to have a meaning other than that assigned to it by [the insurance company]." *Id.* The court concluded that the general term earth movement "must be read to refer to events similar in nature to 'earthquakes, landslides, [and] earth sinking, rising or shifting'—all of which are natural phenomena." *Id.* Taking the phrase in this context, and applying the rule that ambiguities in such clauses must be resolved in favor of the insured, the court held that "the earth movement clause must be read as referring only to phenomena resulting from natural, rather than man-made, forces." *Id.* [52]

---

**51.** *See also Winters v. Charter Oak Fire Ins. Co.*, 4 F. Supp.2d 1288 (D.N.M.1998) (holding that earth movement exclusion in all-risk insurance policy applies only when such movement is due to naturally occurring causes); *Opsal v. United Servs. Auto. Ass'n*, 2 Cal.App.4th 1197, 10 Cal. Rptr.2d 352 (1991) (holding that in the context of other exclusions such as earthquakes and volcanic eruptions, the earth movement exclusion must only apply to naturally occurring earth movement); *Peters Twp. Sch. Dist. v. Hartford Accident and Indem. Co.*, 833 F.2d 32 (3d Cir.1987) (finding that earth movement exclusion in all-risk insurance policy was meant to deny coverage for spontaneous, natural, catastrophic earth movement, and not movement brought about by other causes); *United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 103 N.M. 480, 709 P.2d 649 (1985) (construing the term earth movement to cover only "naturally occurring phenomenon"); *Gul-*

*lett v. St. Paul Fire & Marine Ins. Co.*, 446 F.2d 1100 (7th Cir.1971) (holding that the term "or other earth movement" was limited to the prior types of naturally occurring earth movement specified in the exclusion).

**52.** *See also Steele v. Statesman Ins. Co.*, 530 Pa. 190, 607 A.2d 742 (1992) (concluding the earth movement exclusion in an all-risk homeowners' insurance policy was ambiguous and construing the language of the contract in favor of the insured to exclude coverage for damages from earth movement due to natural events only); *Bly v. Auto Owners Ins. Co.*, 437 So.2d 495 (Ala.1983) (concluding the earth movement exclusion in homeowners' insurance policy was ambiguous "at best" as to whether vibrations caused by heavily loaded logging trucks on a nearby road constituted earth movement and holding that the trial court should have construed the exception

¶40 We conclude the earth movement exclusion in Mid–Continent's policy is ambiguous because although the provision undoubtedly excludes coverage for naturally occurring earth movement such as earthquakes, landslides, and mud flows, several of the terms within the provision, including settling, slipping, falling away, and caving in, could be caused by naturally occurring events, man-made events, or both. If the language in an insurance contract is deemed ambiguous, this Court applies the reasonable expectations doctrine to determine the intent of the parties and to interpret the terms of the insurance contract. *Max True Plastering Co.*, 1996 OK 28, ¶17, 912 P.2d at 868.

¶41 The record clearly demonstrates that Wilson Paving expected coverage in a situation such as this. As mentioned above, in a demand letter from Art Wilson, the owner of Wilson Paving, to a Claims Representative for Mid–Continent, Mr. Wilson stated that Wilson Paving acquired the commercial general liability policy from Mid–Continent for doing paving and excavation work and that "Mid–Continent Casualty Company was my safeguard in just this kind of situation." [53] Mr. Wilson went on to state: "The insurance coverage is what I was paying for and should receive nothing less." [54] In Wilson Paving's application for commercial general liability insurance, the insurance agent noted that the schedule of hazards included "Grading of Land," and specifically noted Wilson Paving's operations included "excavation, tunneling, underground work [and] earth moving." [55] Mid–Continent's policy describes the nature of Wilson Paving's

business as "paving [and] excavating contractor," [56] and the premium audit summary and final audit invoice dated June 8, 2007, which was used in determining the premium for the policy, described Wilson Paving's operations as "dirt work/site excavating/building pads commercial." [57]

¶42 In a similar case from the U.S. District Court for the District of Nevada, a grading contractor that provided "rough grading and earthwork services" was sued for damages in a construction defect lawsuit for "improperly placed or compacted soils, improperly designed or constructed walkways, driveways, slabs, pads, foundation, exterior masonry site retaining/fence walls, and landscapes." *United Nat. Ins. Co. v. Assurance Co. of America*, 2012 WL 1931521 (D.Nev.2012). The grading contractor had purchased various commercial general liability policies from several insurance companies, and the policy at issue in the case [58] excluded from coverage any damages " 'arising out of, resulting from, caused, aggravated or contributed to, directly or indirectly by the subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, or any other movement of land or earth.' " *Id.* at *5.

¶43 The court concluded that the exclusion at issue was ambiguous because it listed "multiple naturally occurring types of earth movement and [threw] on the 'any other movement of land or earth' language." *Id.* at *5. Because of the ambiguity in the exclusion, the court looked to the reasonable expectations of the parties and concluded "it would

narrowly to conclude that damages from the vibrations were not excluded from coverage); *Peach State Unif. Serv., Inc. v. American.Ins. Co.*, 507 F.2d 996 (5th Cir.1975) (concluding the earth movement exclusion was ambiguous and holding that the exclusion referred only to "phenomena related to forces operating within the earth itself"); *Wis. Builders, Inc. v. Gen. Ins. Co. of America*, 65 Wis.2d 91, 221 N.W.2d 832 (1974) (finding that the earth movement exclusion contained ambiguities and concluding that the provision applied only to naturally occurring earth movement).

**53.** Record on Accelerated Appeal, Ex. 11 at Ex. 1 (Letter from Arthur Wilson to Doug Sawyer dated June 25, 2010).

**54.** *Id.*

**55.** Record on Accelerated Appeal, Ex. 14 (Defendant Wilson Paving & Excavating, Inc. Motion to Reconsider, Ex. 2 at 28–29).

**56.** Record on Accelerated Appeal, Ex. 6 at Ex. 1 (Mid–Continent Commercial Lines Policy at 3).

**57.** Record on Accelerated Appeal, Ex. 14 (Defendant Wilson Paving & Excavating, Inc. Motion to Reconsider, Ex. 3 at 56).

**58.** At issue in the case was National Fire's duty to defend under its commercial general liability policy issued to the grading contractor. *Id.* at *1.

be unreasonable to conclude that R.B. Peterson, a grading contractor that moves land as its business, would consider this language to exclude all of its grading and construction work (and resulting damage) to be excluded from the insurance policy it purchased. If so, it would have been entirely illogical to purchase the policy in the first instance. Therefore, this could not have been R.B. Peterson's intention" when it purchased the policy. *Id.* The court held the exclusion applied only to naturally occurring events and not to damages caused by the grading contractor's work on the construction project. *Id.*

¶ 44 We agree with the reasoning of the court in *United Nat. Ins.* and conclude that it is highly unlikely that Wilson Paving, a company whose business involves "excavation, tunneling, underground work [and] earth moving," [59] would have purchased the policy with knowledge that it would not cover losses to property or injuries to persons other than employees due to man-made earth movement. As Wilson Paving pointed out in its Motion to Reconsider, "[i]f this exclusion applies to injury related to excavation of ditches or any excavation or paving work, then Wilson Paving paid $34,394.00 for no insurance coverage because *all of its operations necessarily 'arise out of, are caused by, result from, contribute to, are aggravated by, or are related to … movement of land, earth or mud.'* " [60]

¶ 45 Mid–Continent was aware of the nature of Wilson Paving's business and could have easily excluded man-made earth movement from coverage under the policy had it

wished to do so. In *Davis–Travis v. State Farm Fire & Cas. Co.*, 336 Fed.Appx. 770 (10th Cir.2009), the Tenth Circuit examined an earth movement exclusion in a homeowners' policy. In that case, the policy language excluded earth movement "**regardless of: (a) the cause of the excluded event … or (d)** whether the event occurs suddenly or gradually, involves isolated or widespread damage, **arises from natural or external forces, or occurs as a result of any combination of these.**" *Id.* at 771. The court found the "regardless of the cause" language unambiguously excluded earth movement caused by a water leak that caused the slab to expand and contract. [61]

¶ 46 In *Alamia v. Nationwide Mut. Fire Ins. Co.*, 495 F. Supp.2d 362 (S.D.N.Y.2007), the policy at issue contained an earth movement exclusion that stated:

> We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.
>
> Earth Movement and Volcanic Eruption. Earth movement means: earth movement **due to natural or unnatural causes,** including mine subsidence; earthquake; landslide; mudslide; earth shifting, rising or sinking.

(emphasis added). The court concluded that "due to natural or unnatural causes" unambiguously excluded the earth movement caused by water leaking from a broken pipe. [62]

¶ 47 Mid–Continent's omission of such language in its commercial general lia-

---

**59.** Record on Accelerated Appeal, Ex. 14 (Defendant Wilson Paving & Excavating, Inc. Motion to Reconsider, Ex. 2 at 28–29).

**60.** Record on Accelerated Appeal, Ex. 14 (Defendant Wilson Paving & Excavating, Inc. Motion to Reconsider at 4).

**61.** Other courts have also concluded that the "regardless of cause" language included in the State Farm policies at issue unambiguously excluded earth movements due to man-made causes. *See e.g., Chase v. State Farm Fire and Cas. Co.*, 780 A.2d 1123, 1126 (D.C.2001) (freezing of a pipe and failure of a sump pump caused collapse of home); *Boteler v. State Farm Cas. Ins. Co.*, 876 So.2d 1067, 1068–69 (Miss.Ct.App.2004)

(leaking pipe caused foundation to shift resulting in damage to interior); *Alf v. State Farm Fire and Cas. Co.*, 850 P.2d 1272, 1273 (Utah 1993) (freezing of main water line causing extensive flooding and soil erosion on homeowner's property).

**62.** *See also Liebel v. Nationwide Ins. Co. of Fla.,* 22 So.3d 111 (Fla.Dist.Ct.App.2009) (concluding that the earth movement exclusion in insured's all-risk policy unambiguously excluded coverage of damage to insured's home caused when soil erosion from a ruptured water line beneath the home caused the foundation to settle; exclusion specifically excepted damage caused by "earth movement due to natural or unnatural causes," and the water line rupture was an unnatural cause that resulted in earth movement).

bility policy issued to Wilson Paving is significant. Under our case law, "exclusions exempting certain specified risks are construed strictly against the insurer," *Dodson v. St. Paul Ins. Co.,* 1991 OK 24, ¶ 13, 812 P.2d 372, 377, and "if an insurer desires to limit its liability under a policy, it must employ language that **clearly and distinctly** reveals its stated purpose." *Spears v. Shelter Mut. Ins. Co.,* 2003 OK 66, ¶ 7, 73 P.3d 865, 868 (emphasis added). We hold that the earth movement exclusion in Mid–Continent's policy excludes only earth movement caused by natural events. Because neither party suggests Broom's injuries were caused by naturally occurring earth movement, coverage for Broom's injuries is not barred by the earth movement exclusion.

### *The Judgment Against Wilson Paving is a Final Judgment and Not Subject to Attack in this Appeal*

■ ¶ 48 Finally, Mid–Continent asserts the trial court was incorrect in concluding that Mid–Continent had to move to vacate the underlying judgment against Wilson Paving to challenge the judgment in that case.[63] It is undisputed that even after Judge Cantrell found Mid–Continent had a duty to defend Wilson Paving, Mid–Continent still chose not to defend Wilson Paving. To date, Mid–Continent, admittedly, has not moved to vacate the judgment against Wilson Paving.[64] Neither Broom nor Wilson Paving appealed the judgment, and as such, the judgment entered against Wilson Paving is a final judgment and not subject to attack in this appeal. The issues raised by Mid–Continent in its Counter–Petition in Error relating to this

63. *See* Counter–Petition in Error, Ex. C at 2–3.

64. At the summary judgment hearing, the following exchange took place:
The Court: Let me ask you this: And I'm going to let you make whatever record you want. Do you claim that there's any—well, what is your theory of why I should allow you to attack a judgment that's been final in this Court? What is your theory in that regard? As a garnishee who has chosen—who probably has the capability—in fact, I've seen it in a least one case, where the Supreme Court allowed an insurance company garnishee to seek to vacate a judgment. You've chosen not to vacate the judgment here. You've chosen really, to make your stand on the—policy, and I—itself—

judgment are not properly before this Court. We agree with the trial court that Mid–Continent should have either participated in the suit and appealed the decision or moved to vacate the judgment if it wished to challenge the findings rendered in Broom's case against Wilson Paving.[65]

### *Conclusion*

¶ 49 Wilson Paving purchased two separate insurance policies to insure against all possible risks facing its paving and excavation business: one which covered injuries to its employees (AIIC), and a second policy (Mid–Continent) to cover injuries to the general public, and by definition, temporary workers. Wilson Paving purchased the Mid–Continent policy to cover a temporary worker such as Broom in this exact situation. We hold that coverage for Broom's injuries is not precluded under Mid–Continent's Commercial General Liability Policy. We reverse that portion of the trial court's order finding the earth movement exclusion prevented coverage in this case. We affirm all other aspects of the trial court's order.

**COCA OPINION VACATED; TRIAL COURT'S ORDER GRANTING SUMMARY JUDGMENT TO GARNISHEE–APPELLEE MID–CONTINENT CASUALTY COMPANY AFFIRMED IN PART AND REVERSED IN PART; CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH TODAY'S PRONOUNCEMENT**

¶ 50 REIF, C.J., WATT, EDMONDSON, GURICH, JJ., and JOHNSON, S.J., concur.

Mr. Main: Yes.
The Court: [B]ut do you claim that there's some case that would—that would allow you to attack a judgment that's final?
Mr. Main: Well, the case would—would be the ones which would allow us to attack a judgment which is not—which is not fair or which is unreasonable, and the reason we contend that this judgment is unreasonable is that we contend it is internally inconsistent and contrary to law.
Record on Accelerated Appeal, Ex. 24 (Transcript of Proceedings at 15–16 (April 5, 2011)).

65. *See* 12 O.S. § 1031; 12 O.S. § 1033; 12 O.S. § 1038.

¶ 51 COMBS, V.C.J., KAUGER, WINCHESTER and TAYLOR (by separate writing), JJ., dissent.

¶ 52 COLBERT, J., recused.

TAYLOR, J., dissenting (joined by Winchester, J.):

¶ 1 I respectfully dissent from the Court's decision. The trial court's precise determination of the meaning of the earth-movement exclusion was correct. I write separately to emphasize two serious missteps in the Court's construction of this exclusion. To construe the exclusion as ambiguous and interpret it to apply only to naturally occurring earth movement is a torturous reading of its words. The entire case should turn on the purpose of the insurance policy and the plain language of the exclusion. The Court confuses this liability policy with that of a homeowner's or all-risk policy and then gives only a passing analysis to the actual language at issue. The judgment entered against Wilson Paving in the trial court may be due and owing, but it is simply not covered by this commercial general liability (CGL) policy.

¶ 2 Wilson Paving purchased a CGL policy from Mid–Continent as protection from all types of liability claims for bodily injury and/or property damage that may arise from the business's premises, products, operations, and other enterprises of the business. Wilson Paving's workers' compensation insurance policy covered its employees while on the job; its CGL policy was to be its public liability policy. Steven Broom was an employee of the temporary agency on the Wilson Paving job site, and he was injured while working inside a trench that caved in. The accident and subsequent injury were fully covered by the temporary agency's workers' compensation coverage, and Broom collected the full measure of what he was entitled for this on-the-job injury.

¶ 3 The parties **added** the earth-movement exclusion to the CGL policy as an **endorsement** which modified the CGL policy coverage. The language of this exclusion is

straightforward, but unfortunately misconstrued by the Court:

> This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" arising out of, caused by, resulting from, contributed to, aggravated by, or related to earthquake, landslide, mud flow, subsidence, settling, slipping, falling away, shrinking, expansion, caving in, shifting, eroding, rising, tilting or any other movement of land, earth or mud.

The Court disregards its rules of construction and interprets the exclusion as ambiguous because it excludes all earth movement, natural and man-made. The basis for this puzzling conclusion on ambiguity comes from the Court's reliance on cases from other jurisdictions, and multiple errors in logic lead the Court to this point.

¶ 4 First, the cases relied upon by the Court all involve all-risk or homeowner's insurance—an entirely different basis for insurance than the CGL policy. Second, the Court only passes at construing the language of the policy and fails to inform the reader just what term is ambiguous. To be generous, the Court confuses a lack of restrictive adjectives in the exclusion for what it says is an ambiguity. The Court chooses not to limit itself to the agreement alone, instead adding restrictive language where the parties did not. *See ENI Producing Props. Program Ltd. P'ship 1982–I ex rel. Baytide Petroleum, Inc. v. Samson Inv. Co.*, 1999 OK 21, ¶ 17, 977 P.2d 1086, 1089 ("Whether the parties intentionally left out language ... or unwittingly neglected to account for it, this Court is nonetheless constrained by the agreement."). Third, a majority of the cases the Court discusses actually disagree with the Court's conclusion on the ambiguous provision, each concluding that an earth-movement exclusion is not ambiguous.[1]

¶ 5 The Court next errs by misapplying the doctrine of reasonable expectations. *See Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 1996 OK 28, ¶ 1, 912 P.2d 861,

---

1. *See Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 38 (3d Cir.1987); *Fayad v. Clarendon Nat. Ins. Co.*, 899 So.2d 1082, 1088 (Fla.2005); *Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn.1986); *Rankin ex rel. Rankin v. Generali–U.S. Branch*, 986 S.W.2d 237, 240 (Tenn.Ct. App.1998).

863. The Court relies on the self-serving subjective statements of the insured despite this Court's restrictive application of the doctrine of reasonable expectations to only the "objectively reasonable expectations" of a like insured. *Id.* In hindsight, the insured is always going to allege the existence of coverage when in dispute. Yet Wilson Paving was in the excavating and trenching business, it was a sophisticated company, and it agreed to the endorsement to the CGL policy that added the exclusion. It is perhaps even more telling of the parties' intent that the exclusion was added as an endorsement, separate and apart from the list of exclusions in the main body of the CGL policy. The Court adopts the insured's subjective complaints as reasonable expectations; it then further errs when it agrees that the entire CGL policy is worthless because it does not cover trench cave-ins. This conclusion is unfair and inaccurate as the CGL policy covers a wide range of Wilson Paving's possible liabilities. What it specifically does not cover is this cave-in. The Court should refrain from indulging in the subjective complaints of the insured when the language is easily construed and understood and the doctrine of reasonable expectations looks at the objectively reasonable expectations of a like insured.

¶ 6 If the Court were to devote even a cursory moment to construing the language, the need for the Court's tortuous path to its conclusion would be irrelevant. Our rules of contract construction forgo the need to rely on other courts' decisions. Our "cardinal rule" when examining insurance contracts "is to determine and give effect to the intent of the parties." *In re Kaufman*, 2001 OK 88, ¶ 13, 37 P.3d 845, 853. When policy provisions are clear, consistent, and unambiguous, we look to the plain and ordinary meaning of the policy language to determine and give effect to the parties' intent. *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, ¶ 12, 812 P.2d 372, 376–77; 15 O.S.2011, §§ 152, 154, 160. And the first guidepost we must observe in insurance-contract construction is that "[p]arties are at liberty to contract for insurance to cover such risks as they see fit and they are bound by terms of the contract." *Cranfill v. Aetna Life Ins. Co.*, 2002 OK 26, ¶ 5, 49 P.3d

703, 707. We are not at liberty to rewrite the terms the parties negotiated. *Id.* The Court fails to take these rules to heart.

¶ 7 The policy's plain language excludes coverage for any movement of land, earth, or mud. The endorsement applies to events related to earth movement. The cause of those events is not limited by the policy; this Court cannot in turn choose to limit those causes. The plain language establishes that the parties intended to extend this endorsement to earth movement whether natural or man-made. Yet the Court chooses to rewrite the exclusion and to ignore the intent of the parties apparent from the endorsement's plain language. The Court must refuse to rewrite policies to create distinctions where no language in the policy exists to support such a distinction. *See Max True Plastering*, 1996 OK 28, ¶ 20, 912 P.2d at 869 ("In interpreting an insurance contract, this Court will not make a better contract by altering a term for a party's benefit."). By refusing to read the policy language as written, the Court violates this governing tenant for construction of insurance contracts. *See id.* The Court indulges in a forced and constrained interpretation to reach a result that is repugnant to the plain language of the provision.

¶ 8 The case before the Court should turn on a simple construction of the endorsement. The earth-movement exclusion bars coverage for bodily injury "arising out of . . . caving in . . . of land, earth or mud." The endorsement's construction is dependent on the definition of the phrase "caving in." We define words in their ordinary meaning if the policy does not define them. *Id.* ¶ 19, 912 P.2d at 869. Merriam Webster's defines *cave* as "to fall in or down" or "to cause to fall or collapse." Merriam Webster, *Cave*, http://www. merriam-webster.com/dictionary/cave (last visited Mar. 4, 2015). Any injury caused by a cave-in or collapse of land, earth, or mud is excluded here. To quote the Court's recitation of facts: "At approximately 2:30 p.m. that same day, the trench in which Broom was working collapsed twice. . . ." The cause of Broom's injuries is excluded from coverage under the endorsement to the Mid–Con-

tinent CGL policy. I refuse to rewrite this
policy.